GREAT EASTERN CASUALTY CO. v. THOMAS.  (No. 8184.)

(Court of Civil Appeals of Texas. Ft. Worth. May 8, 1915. Rehearing Denied June 5, 1915.)

1. INSURANCE &#8758;138—ACCEPTANCE OF POLICY—EFFECT.

In the absence of fraud or mistake, an applicant for insurance, who accepts or retains a policy delivered to him, is bound by its terms, whether he reads it or not, if nothing prevents him from doing so, since he is conclusively presumed to have knowledge of the contents.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 246–249; Dec. Dig. &#8758;138.]

2. INSURANCE &#8758;143—REFORMATION OF POLICY—FRAUD AND MISTAKE.

An insurance policy will not be reformed to accord with an alleged actual intent of the parties, unless there was mutual mistake of the parties as to its terms, or mistake on one side, coupled with fraud on the other.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 265–272; Dec. Dig. &#8758;143.]

3. EVIDENCE &#8758;441—PAROL EVIDENCE AFFECTING WRITINGS — PREVIOUS NEGOTIATIONS REDUCED TO WRITING.

Parol negotiations and an agreement for insurance preceding execution of the policy could not be shown to vary or contradict its terms, since it would be conclusively presumed that all the previous parol negotiations leading up to the issuance of the policy were included in the written instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. &#8758;441.]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Action by Frank E. Thomas against the Great Eastern Casualty Company. Judgment

for plaintiff, and defendant appeals. Reversed.

J. T. Ranspot, of Palo Pinto, and Sleeper, Boynton & Kendall, of Waco, for appellant. W. H. Penix, of Mineral Wells, for appellee.

BUCK, J. This suit was brought by appellee against the appellant to recover $1,250, and statutory penalty and attorney's fees, claimed to be owing on an alleged contract of indemnity for accidental loss of a foot by plaintiff.

Plaintiff alleged that on or about the 3d day of May, 1913, one R. L. Mastin, agent of defendant, induced him to apply to defendant for an accident policy, and represented that the policy would cover all kinds of accidents, including the loss of a foot, for which defendant would pay plaintiff $1,250, and, relying on said representations, plaintiff paid said Mastin for defendant $10, represented by him to be the premium necessary to obtain said policy from defendant embodying the terms aforesaid, and later plaintiff received policy No. C–73664, issued by defendant and countersigned by said Mastin and dated May 3, 1913. Plaintiff further alleged that he was not versed in law, nor in the interpretation of accident insurance policies, and that he relied wholly upon the statement and representations of said Mastin, and that when he received the policy he did not examine its contents, but, relying on the statement and representations aforesaid, and believing them to be true, he placed the policy among his papers, and did not read the same, nor have its contents examined, until after the accident hereinafter mentioned. He further alleged that during the following September, and while said policy was in full force and while plaintiff was engaged in shipping cattle on a stock train at Weatherford, Tex., his foot was caught between the drawheads of two box cars, and so crushed and mashed that it was necessary to have the same amputated, and that thereupon defendant became liable and bound to pay plaintiff the said $1,250, according to the alleged contract between plaintiff and the defendant company, through its agent, Mastin. He further alleged that the policy, which was in fact issued by the defendant company, was entirely different in terms, indemnity, and conditions from that agreed upon by plaintiff and the said defendant, through its agent, and that the said policy so delivered was not the policy purchased and paid for by plaintiff, but was restrictive in its terms, and did not include liability for the loss of a foot under the circumstances of the accident alleged, and plaintiff prayed that if it should be held necessary, in order for him to recover, that the policy issued to him by defendant should be reformed so as to comply with the agreement and contract made with the defendant through its agent, the policy so reformed should be made to cover and provide for an indemnity in the sum of $1,250 for the loss of a foot. He further alleged due notice and proof of injury and demand made on defendant and refusal by it to pay the amount claimed, and sued for $1,250, together with the statutory penalty of 12 per cent. and attorney's fees in the sum of $150. The plaintiff further pleaded that the defendant company was estopped from denying its liability by virtue of said contract between plaintiff and said company through its said agent, because of the happening of the accident by which he lost his foot, and that in reliance upon the representations and statements alleged to have been made by said agent, and in reliance on the issuance by defendant company of the policy claimed to have been purchased, plaintiff was prevented from securing a policy which would have, in every respect, indemnified him against the loss of a foot.

The defendant answered by general demurrer and special exceptions and by specially denying those allegations in plaintiff's petition which set out a contract of indemnity on the part of the defendant, through its agent, different from that shown in policy No. C–73664, issued by defendant, and specially pleaded that by accepting and retaining said policy so issued, plaintiff was estopped to deny or to complain of any of the provisions of the same, and that he had been in possession of said policy for four months prior to the happening of the injury complained of, and was now estopped from saying that said policy did not embody and contain all the contracts and agreements between himself and the agent. Defendant further answered that the application for said policy was in writing and signed by plaintiff, and that the policy issued was the identical policy contracted for by plaintiff, and contained all the stipulations and agreements between plaintiff and defendant; that plaintiff was not prevented from examining the same by any act of the defendant, and that it was his duty to so examine said policy and to ask a rescission of the same if not in compliance with his contract. Defendant further denied that it had ever received any notice in writing from plaintiff, his agent or attorney, that plaintiff was claiming any damages or indemnity against it by reason of any verbal contract entered into between plaintiff and R. L. Mastin, and specially denied any liability for the 12 per cent. penalty, or the attorney's fees.

The cause was tried before the court without the aid of a jury, and judgment rendered for plaintiff in the sum of $1,250 damages, and, in addition thereto, $150 statutory penalty, and also $150 as attorney's fees, from which judgment an appeal was prosecuted.

The court filed his findings of fact and conclusions of law as follows:

### "Conclusions of Fact.

"(1) I find that on or about the 3d day of May, 1913, R. L. Mastin was the agent of the defendant, Great Eastern Casualty Company, with authority to countersign policies and to

appoint agents, and also had authority to make contracts for the defendant, and also had authority to collect premiums for the defendant.

"(2) I find that the defendant and the plaintiff entered into a contract by and through defendant's agent, R. L. Mastin, by which the defendant undertook to insure the plaintiff against loss from accident caused in any way, and especially the kind of accident and manner of its happening as sued on by the plaintiff.

"(3) I find that the plaintiff paid a premium to the defendant for a policy of accident insurance to begin about the 3d day of May, 1913, and to run for one year, which accident policy was to cover any and all kinds of accident to the plaintiff, and especially the one sued for, and in manner in which same happened.

"(4) I further find that said defendant agreed to pay this plaintiff for the loss of a foot at the ankle the sum of $1,250.

"(5) I find that the defendant admits that the plaintiff lost a foot at the ankle on or about the 23d day of September, 1913, at Weatherford in Parker county, Tex., from an accident caused by the sudden backing of a freight train without warning while plaintiff was crossing same between two box cars, which sudden backing of the train caused plaintiff's foot to slip and catch between the drawhead and some other part of the box car, which crushed plaintiff's foot until it was off at the ankle.

"(6) I further find that the defendant, as a matter of fact, does issue a policy that will cover all kinds of accidents, and especially the one sued on herein, and was issuing such policy at time of the contract for policy by plaintiff with defendant.

"(7) I further find that it was admitted by the counsel for defendant, upon the trial of the cause, that it did issue at the time policies that would cover any and all kinds and manner of accidents, and especially the one alleged in plaintiff's petition, but that such policy sold for a premium of $60 per annum.

"(8) I find that the policy issued by the defendant was not the policy contracted for by the plaintiff, and was not the policy agreed to be issued to him by the defendant, at the time.

"(9) I find that the policy contracted for by the plaintiff was not issued to him by the defendant, but that the defendant did issue such policies.

"(10) I find that the plaintiff received the policy about the 1st day of June, 1913, and placed the same away without reading the same.

"(11) I find that the policy was paid for by the plaintiff at the time his application therefor was taken, upon the agreement that same would cover all kinds of accident that might happen to him during the life of said policy, but that said policy, when issued, did not cover the agreement between the plaintiff and the defendant at the time he paid for same.

"(12) I find that plaintiff relied wholly upon the statements of the defendant through its agent Mastin as to what said policy would contain as to stipulations and as to its contents, and as to what it would cover in the way of accidents and in the manner of the happening of accidents.

"(13) I find that plaintiff contracted for, and defendant agreed to give him, a policy that would cover any and all kinds of accident, and especially the one alleged, whatever the manner of their happening, and in the manner alleged in plaintiff's petition.

"(14) I find that plaintiff did not waive his right by placing said policy away and failing to read same before the accident to him on or about the 23d day of September, 1913.

"(15) I find that plaintiff never read said policy until after the accident which happened to him on or about the 23d day of September, 1913, and that he never knew its contents until after said accident, but relied wholly upon the contract and agreements as to the contents of said policy entered into with the defendant on or about the 1st day of May, 1913.

"(16) I find that plaintiff, soon after the accident, notified the defendant of the happening of the accident, and demanded payment of damages in the sum of $1,250 soon thereafter, and I find that the defendant refused to pay same within 30 days after demand therefor, and within 30 days before the filing of this suit, and that it is due the plaintiff 12 per cent. damages, as provided by the statutes.

"(17) I find that plaintiff has agreed to pay his attorney the sum of $150, which I find to be a reasonable attorney's fee for the prosecution and collection of the loss alleged in plaintiff's petition.

"Conclusions of Law.

"1. I conclude as a matter of law that the contract between the plaintiff and defendant was a binding one, and the defendant, having accepted plaintiff's money, became liable under said contract to pay plaintiff the sum of $1,250 for the loss of a foot at the ankle.

"2. I further conclude as a matter of law that plaintiff did not waive his right by virtue of placing said policy away without having read same until after the accident.

"3. I conclude that the defendant is due the plaintiff 12 per cent. damages provided by article 4746, McEachin's Rev. St. 1911.

"4. I conclude as a matter of law that under said statute defendant should pay the plaintiff the sum of $150 as a reasonable attorney's fees for the prosecution and collection of the loss sued on herein.

"5. I conclude as a matter of law that the contract of insurance that was issued to the plaintiff by the defendant of date about May 3, 1913, should be reformed so as to include the contract entered into by and between the defendant about the date for which plaintiff paid to defendant the premium, for which defendant agreed to issue a policy covering any and all kinds of accidents, without limiting their manner of happening.

"6. I further conclude as a matter of law under the evidence that plaintiff should recover of the defendant the sum of $1,250 for the loss of a foot, which happened accidentally, and in addition 12 per cent. damages thereon in the sum of $150, and also in addition thereto the sum of $150, as reasonable attorney's fees."

No assignments of error were filed in the lower court and the appellant relies as to the sufficiency of its specifications upon the claim that fundamental error is presented.

Defendant alleged in its answer to the allegations of the plaintiff that the policy delivered to him by defendant did not contain the terms of the contract between himself and defendant, and to the allegation of mutual mistake that the facts were that the plaintiff applied to defendant's agent for a limited accident insurance policy; that said application was in writing, and signed by plaintiff, and that the policy delivered to plaintiff, to wit, No. C–73664, contained all the stipulations and agreements between plaintiff and defendant. While plaintiff in his first supplemental petition specially denied that plaintiff applied for a limited insurance policy, to wit, policy No. C–73664, and that said policy was the identical policy contracted for by plaintiff, yet he did not deny that plaintiff did sign the application for such limited insurance policy, but alleged that he was unfamiliar with accident insurance policies, and knew nothing about the kind of

policy he was applying for, except as stated by the agent of the defendant, R. L. Mastin, and thought that he was applying for a policy covering all kinds of accidents and including the accident alleged in his petition. From this state of the pleadings, we presume it is conceded by plaintiff that the application signed by him was in fact for policy No. C—73664. By reference to the statement of facts, if it be permitted under this state of the record, we find that defendant introduced in evidence the application of plaintiff for policy No. C–73664, and the plaintiff introduced the policy itself.

[1-3] Ordinarily, where a policy is delivered to the insured, and he accepts or retains the same, he is bound by its terms whether he reads it or not, if there are no facts shown which prevented him from doing so. Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Goddard v. Insurance Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Insurance Co. v. Gober, 50 Ga. 404; Cleaver v. Insurance Co., 71 Mich. 414, 39 N. W. 571, 15 Am. St. Rep. 275; Bonneville v. Assurance Co., 68 Wis. 298, 32 N. W. 34; Quinlan v. Insurance Co., 133 N. Y. 356, 31 N. E. 31, 28 Am. St. Rep. 645; Insurance Co. v. Swank, 102 Pa. 17; Insurance Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915. In the last-cited cases our Supreme Court uses the following language:

"The fact that the plaintiff did not know the contents of the policy will not relieve him from the binding force of the warranty contained in it. He could have read it if he had desired to do so."

In the absence of allegations of fraud or mistake, plaintiff, having accepted the policy, will be conclusively presumed to have had knowledge of its contents. Insurance Co. v. Holcomb, supra; Insurance Co. v. Post, 25 Tex. Civ. App. 428, 62 S. W. 140. It is true that plaintiff alleged mutual mistake, and alleged a representation on the part of the agent, Mastin, that he would have issued by the company a policy of general liability, but the court in his findings of fact failed to find the existence of any mutual mistake or the existence of any fraud or fraudulent representations, so far as the same might affect the contents and terms of the application made and the policy issued, nor does the statement of facts disclose either mutual mistake or fraud, and therefore at least a majority of us think (the writer having some doubt upon the matter) that the judgment cannot be sustained on the ground of mutual mistake. It is said in 34 Cyc. 925, that abundant authority establishes the fact that insurance policies are subject to be reformed when grounds therefor have been plainly made out, and that in the same suit plaintiff may secure a reformation and a recovery. See, also, N. Y. Ins. Co. v. Hagler, 169 S. W. 1064. But we understand the rule to be that to justify reformation of an insurance contract there must have been alleged and proven mutual mistake, or mistake on one side, coupled with fraud on the other. In Hartford Fire Ins. Co. v. Haas, 87 Ky. 531, 9 S. W. 720, 2 L. R. A. 64, it was held that the liability of an insurance company could not be relieved by the inserting of a provision in the policy for the benefit of the children of the insured, as well as the insured herself, merely because the insured believed she had, by the procuring of the contract of insurance, protected the interests of her children as well as her own. See, also, 19 Cyc. 651 et seq. It is true that it has been held that when the agent of an insurance company to whom an applicant correctly stated matters concerning which information was desired by the company makes a mistake in reducing the application to writing, which is signed by the applicant with a warranty of its correctness, and the erroneous statement is made a part of the policy, the act of the agent will operate as an estoppel to prevent the company from making the warranty available as a defense. Insurance Co. v. Lewis, 48 Tex. 622. But the case under consideration does not present such a phase. The application signed by plaintiff was for a policy of the kind and character issued, and there is nothing in the record, or in the findings of fact by the court, to indicate that the issuance of the policy No. C–73664, was due to mutual mistake, either of the plaintiff and the agent, or of plaintiff and the defendant company, or due to a mistake on the part of plaintiff and fraud on the part of the agent or of the company. The facts, as testified to by plaintiff, show that he made a verbal agreement, or parol contract, with the agent Mastin to have issued to him a policy covering accidental injury generally, but there is nothing to show that the insurance company had any knowledge of this alleged parol agreement between the plaintiff and the agent, or any information as to what kind of policy was desired or had been contracted for by plaintiff except as shown in said application. And where parol negotiations have been had which are understood shall be reduced to writing in order to constitute a contract between the parties, and later a written contract is executed and delivered, it would be conclusively presumed that all terms and provisions of the contract are included in the written instrument, and said written instrument could not be varied by reason of any parol agreement or negotiation had prior thereto. A parol agreement of insurance, if made prior to the execution of the policy, cannot be shown to vary or contradict its terms. Insurance Co. v. Post, supra; Keller v. Insurance Co., 27 Tex. Civ. App. 102, 65 S. W. 695; Insurance Co. v. Prather, 25 Tex. Civ. App. 446, 62 S. W. 89.

It further appears that the premium on the policy issued was $10 a year, while the premium on a policy for same amount, but covering general accidents, was $60 a year. If article 4954, Vernon's Sayles' Tex. Civ.

Stat., which prohibits, under penalty, insurance companies doing business in this state from making any discrimination or distinction in favor of individuals of the same class and equal expectation of life in the amount of or payment of premiums or rates charged, applies to accident insurance companies as well as to life insurance companies, a further question is presented as to whether or not the attempted enforcement by the courts of the alleged parol contract would not be against public policy. But we do not feel called upon to pass on this question, because the majority of the court are of the opinion that the judgment of the trial court should be reversed for the reasons given above.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes ·
† Writ of error pending in Supreme Court.