NATIONAL EQUITABLE SOC. OF BELTON v. CARPENTER. (No. 1559.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 13, 1916. On Motion for Rehearing, Feb. 24, 1916.)

1. BUILDING AND LOAN ASSOCIATIONS ⟜ 26—CONTRACTS—FRAUD—RESCISSION.

Plaintiff, who in his application for defendant's loan contract stated that he had examined its plans, had read a printed copy of the kind of contract applied for, and understood all its provisions, and that in making the application he did not rely upon any statements or guaranty on the part of the defendant's agent, had no right to rescind the contract delivered to him, because he did in fact rely upon the agent's representations to him made without the authority or the knowledge of the association, and, notwithstanding he had not read the contract, was chargeable with knowledge of its contents when he accepted it, and hence was not entitled

to rescind on the ground of the agent's misrepresentation as to the terms of the loan.

[Ed. Note.—For other cases, see Building and Loan Associations, Dec. Dig. ☞26.]

2. BUILDING AND LOAN ASSOCIATIONS ☞ 26—APPLICATION FOR CONTRACT — KNOWLEDGE OF CONTENTS.

In such case, where it did not appear that plaintiff was prevented by any fraud of the agent from reading the application before he signed it, he was in no position to claim that he was ignorant of its contents, although in fact he did not read it.

[Ed. Note.—For other cases, see Building and Loan Associations, Dec. Dig. ☞26.]

On Motion for Rehearing.

3. BUILDING AND LOAN ASSOCIATIONS ☞ 41(7) — BREACH OF CONTRACT — PROOF OF DAMAGES.

If such suit was treated as one for damages for breach of the contract actually made as explained by the society's agent, plaintiff was not entitled to judgment, where he merely showed that the society had agreed to lend him money within a time specified, and failed to do so, as that did not show any damage.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. § 84; Dec. Dig. ☞41(7).]

4. FRAUD ☞49—FRAUD OF AGENT—ACTION FOR DAMAGES—PROOF.

If such suit is treated as one for damages for the deceit of the society's agent inducing plaintiff to enter into a contract he otherwise would not have made, plaintiff was not entitled to judgment, where he did not allege and prove any facts which would enable the court to measure his damages.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 44, 45; Dec. Dig. ☞49.]

Appeal from Bowie County Court; Lee Tidwell, Judge.

Suit by J. W. Carpenter against the National Equitable Society of Belton. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

The suit was by appellee against appellant. It was to recover back $110 paid by the former to the latter for and on one of its "loan contracts," and was commenced in a justice court. As grounds for the recovery he sought, appellee alleged as follows:

"That defendant is a corporation under the laws of the state of Texas, and on the 26th day of February, A. D. 1913, was pretending to make loans, for the purpose of improving and building homes, to persons desirous of borrowing money for that purpose upon real estate security. That said defendant on or about said date and in Bowie county, Texas, by its duly authorized agents, fraudulently procured and induced plaintiff to subscribe for one of its contracts and then and there stating and representing to plaintiff that if he would pay to the defendant the sum of one hundred ten and no/100 dollars, that defendant would immediately, as soon as plaintiffs presented it with an abstract of title to certain real estate, make a loan of the sum of one thousand dollars to plaintiff at 6 per cent. interest per annum, and that plaintiff, relying upon said statement and representation so made to him by defendant, paid to said defendant the sum of one hundred ten and no/100 dollars and thereafter within ninety days made application to the said defendant and offered to the said defendant an abstract of the title to the real estate upon which the loan was to be made and which would be acceptable to the defendant, and upon which he applied for the loan in the sum of one thousand dollars; that said statements so made in Bowie county, Texas, were fraudulent and untrue, and made for the purpose of procuring and inducing the plaintiff to pay to the defendant the said sum of one hundred ten and no/100 dollars, and without any intention on the part of the defendant to make the said loan, or any other loan; and that since said date and time defendant has refused to make any loan whatever, and refuses to repay plaintiff said sum of money, but has appropriated same to its own use to plaintiff's damage in the sum of one hundred ten and no/100, with interest from the 26th day of February, 1913, for which he prays judgment and for costs of suit."

In the county court, to which an appeal was prosecuted, judgment was rendered in appellee's favor for the sum he sued for. This appeal is from that judgment.

It appears from the record that appellee applied to appellant for a "loan contract," through and at the instance of one King, appellant's agent, to whom he at the time paid $10 as the price thereof. The application was in writing, and was as follows:

"Application for a Contract of National Equitable Society of Belton (Incorporated) Belton, Texas.

"I, J. W. Carpenter, being of legal age, hereby apply for one of your contracts for the amount of $1,000 in accordance with the plans of the society as set out in said contract, and have paid Mr. King & Mathews, a solicitor (whose authority, I understand, extends only to the sales of contracts issued by the society under their printed covenants and requirements), $10 as purchase price for same, and I agree to pay the society hereafter, without notice, a monthly installment of dues on said contract of $1,000 on or before the 15th day of each month following the date hereof, until the contract issued hereon is surrendered for a paid-up certificate of deposit, or cash surrender value, or on account of a regular loan being granted, or until said contract is fully paid according to its printed covenants and requirements.

"I have examined the plans of the society and have read a printed copy of your contract and am familiar with and understand and accept all the covenants and requirements of said contract, and I make this application expressly and solely upon the terms and conditions of this application, the covenants and requirements of said contract issued by the society, and not upon the faith of any statements, promise, undertaking or guarantee on the part of said solicitor or any other person, and it is hereby expressly agreed that this application without being corporeally attached thereto shall be a part of the contract issued hereon and every condition hereof and statement herein is as binding as if corporeally attached to or incorporated in said contract.

"In witness whereof, I hereunto subscribe my name this 21st day of February, 1913.

"Signature, J. W. Carpenter.
"Street Address, 1403 Olive Street.
"City, Texarkana; State of Texas."

Appellant thereupon delivered to appellee, and he accepted as a compliance with his

application as shown by his indorsement thereon, appellant's obligation as follows:

### "Contract.

"National Equitable Society of Belton, hereinafter styled 'the society,' for and in consideration of the sum of $10.00, being the purchase price hereof, in hand paid by J. W. Carpenter, hereinafter called 'the holder hereof,' of Texarkana, Texas, the receipt of which is hereby acknowledged, and the payment by the holder hereof of $10.00 monthly, in advance on the 15th day of each month consecutively, for the term hereof, does hereby with said holder hereof and his heirs, executors, administrators and assigns, subject to the terms of the written application herefor, and the covenants and requirements hereto attached, both of which application and said attached covenants and requirements are expressly made a part hereof, and as fully incorporated herein as if set forth completely above the ensuing signatures, agree and bind itself:

"(1) That from each payment, except the purchase price and the first two made hereon, the society will deposit to the credit of the loan reserve fund, with a state or National Bank, designated by the society as a depository, 85 per cent. thereof, with all fees and fines, to be held by said bank and paid out by it for the purpose only of making loans or settlements on contracts, as and when the society may direct; and that from said loan reserve funds, all prior claims thereon having been satisfied, the society, whenever the accumulation is sufficient, will lend the holder hereof, at the rate of interest hereinafter provided, and repayable in the manner and form, and as and when, as hereinafter stipulated, the sum of $1,000.00, only on lawful, good and sufficient real estate security, legally mortgageable by the said the holder hereof for said loan: Provided, that prior to the making of said loan said the holder hereof shall have made at least 10 of the hereinabove stipulated monthly payments, which may be done in advance if desired by said the holder hereof.

"(2) When ten of the hereinabove stipulated monthly payments have been made hereon, either in monthly installments or on cash payments, in advance, the holder hereof at any time thereafter may file his application for a loan on acceptable real estate security, subject to the approval of the executive committee; but it is expressly understood that no loan will be approved for more than 85 per cent. of the value of the property offered, as ascertained by appraisement thereof, within the opinion of the executive committee. The priority of right to a loan shall be determined by priority of filing applications therefor, but the executive committee shall have the right to reject any application for a loan on account of insufficiency of security offered.

"Witness the signature and seal of the society by and through its duly authorized officers, this 26th day of February, A. D. 1913, in duplicate.
        "National Equitable Society of Belton,
            "Per E. C. Clabaugh, President.
"J. W. Hearon, Secretary.
"This contract is accepted by me with full understanding of all the terms and conditions hereof and hereto attached, all of which have been read by me this 10th day of March, A. D. 1913.
            "J. W. Carpenter."

One of the "covenants and requirements" referred to in the contract as attached to and forming a part of it was as follows:

"(13) The society shall be bound by and responsible for only such statements as are contained in this contract, and the application therefor, and no officer or agent, or solicitor of this society, general or special, or state agent, has any authority to promise a loan in any particular time, or bind the society by any promise, representations or any statements not contained in this contract, or in the application therefor."

Having each month for six months after the obligation was delivered to him paid appellant the sum of $10, and then the sum of $40, making, with the $10 paid by him at the time he applied for the contract, a total of $110 paid by him to appellant, appellee, on a blank furnished to him for the purpose, applied for the loan of $1,000 appellant had agreed to make to him. With reference to this application appellee testified:

"I was notified within a few days that the same had been received and filed, and as soon as acted upon I would be notified. I waited about 90 days after I had submitted my plans and made application for my loan, and not being notified that the loan had been made, I wrote the society, and was then notified that there was no certain time in which my loan would be made, and that the society would make no definite promise of the time when I might expect and get my loan. This was the first time that I knew or had any idea I would not get my loan as the agent told me, and as I expected. I then ask for the return of my money, but was refused. I was requested to continue paying $10 per month to the society until I had paid a total of $1,000 or until the society got ready to make me a loan."

He further testified that the agent (King) represented to him that if he would apply for the contract and pay $110 as he did, appellant would, "within from 30 to 60 days, and not over 90 days at the outside," from the time he paid the $110, loan him $1,000 on the security of property he owned, and which the agent had inspected and declared to be amply sufficient security for a loan of that amount, and that he was induced by such representation so made to him to apply for the contract and pay appellant $110 as above stated.

L. H. Henry, of Texarkana, for appellant. Wheeler & Wheeler, of Texarkana, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] The theory upon which the suit was brought and prosecuted was that appellee, having a right to do so, had rescinded the contract he entered into with appellant and was entitled to recover back the sum he had paid to it. Without deciding whether they were or not, it may be conceded, in disposing of the appeal, that the representations made by the agent (King) and relied upon by appellee, as he claimed, were of such a character as would have entitled him to a rescission had it appeared that King was authorized by appellant to make them on its behalf; for if the representations were of that character the judgment, nevertheless, cannot be sustained, because it appeared that King was not authorized to make them, and that appellee was chargeable with knowledge of the fact that King exceeded his authority to act for appellant when he made them. So far as the record shows to the contrary, appellant neither authorized nor knew anything about the repre-

sentations made by King. In obligating itself as it did in the contract it acted in utter ignorance, it seems, of the fact that such representations had been made to appellee, and, moreover, in reliance, it seems upon his understanding fully the terms upon which it sold its "loan contract," for in his application to it appellee assured it that he had examined its plans, had read a printed copy of the kind of contract he applied for, was familiar with and understood all the covenants and requirements of such a contract, and in making the application did not rely upon "any statements, promise, undertaking or guarantee on the part of said solicitor (King) or any other person." In the face of such representations as those just recited, made by appellee to appellant, it is obvious, we think, that he had no right to rescind the contract appellant delivered to him, because he did in fact rely upon the representations made to him. To hold otherwise, it seems to us, would be to say, in effect, that appellee could induce appellant to enter into a contract with him on his assurance that certain representations had not been made to him, and then rescind it on the ground that they had been made to him. The theory upon which, it seems, appellee thought he was entitled to the relief he obtained, was that he made the application for the loan on a blank furnished to him by the agent, did not read it carefully before he signed it, and as a matter of fact when he signed it had not read nor seen a copy of one of appellant's loan contracts. "I signed my name to the application," he testified, "without paying much attention to what I signed." It did not appear that he was prevented by fraud of any kind practiced upon him by the agent from reading the application before he signed it. Therefore, it must be said, it did not appear that he was in a position to claim that he was ignorant of the contents of the application. Loan Co. v. Thomas, 28 Tex. Civ. App. 379, 67 S. W. 457. If, however, it did not appear that appellee was in the attitude of having induced appellant to enter into the contract in reliance upon the truth of the representations contained in his application, we nevertheless would be of opinion the judgment in his favor was unwarranted. It will be noted, as is shown in the statement of the case above, that appellee by his writing indorsed thereupon accepted the contract tendered to him by appellant "with full understanding of all the terms and conditions hereof and hereto attached, all of which," he said, "have been read by me." One of the "terms and conditions" referred to as "hereto attached," was the one numbered "13," set out in the statement above. If appellee read that, as he said he did, in his written acceptance of the contract, he must have known that King, in making the representations he did as to the time when appellant would make the loan, was acting outside his authority as appellant's agent. Testifying as a witness, however, appellee said he did not read the contract before he accepted it. The excuse he gave for not reading it was that it "was hard for him to understand." It does not appear in the record that he failed to read the contract, or have it read and explained to him, because of any act or conduct of appellant or its agent. Therefore we think it must be said that it appeared as a matter of law that notwithstanding he did not read it appellee was chargeable with knowledge of the contents of the contract at the time he accepted it, was bound by its terms, and hence was not entitled to the relief he sought. Gibson v. Brown, 24 S. W. 575; Insurance Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 871; Casualty Co. v. Thomas, 178 S. W. 606; Wooters v. Railway Co., 54 Tex. 294.

The judgment will be reversed, and judgment will be rendered in favor of appellant.

### On Motion for Rehearing.

It is insisted that we erred in treating appellee's suit as one to rescind the contract between him and appellant. It was so treated because it was to recover back the money he had paid to appellant. He was entitled to that relief only upon the theory that he had a right to rescind the contract.

[3] His suit, he says in the motion, was for "damages for breach of the contract actually made as explained by the agent." If it was, then, plainly, he was not entitled to the judgment he obtained, because he did not prove he sustained any damage. Proof merely that appellant had agreed to lend him money within a time specified and failed to do so, lacked much of showing that he was thereby damaged.

[4] If the suit should be treated as one for damages for deceit of the agent, whereby appellee was induced to enter into a contract he otherwise would not have made, as appellee seems to argue it might have been, then he was not entitled to the recovery he had, nor to any recovery, for the same reason, to wit, because he did not prove that he suffered any damage. If he was so induced to enter into the contract, and if for any reason it was of less value to him than he had a right to expect it to be, he should have alleged and proven that fact and the facts which would have enabled the court to measure the damages he suffered.

The motion is overruled.