### EQUITY MUT. FIRE INS. CO. et al. v. HARRELL et al. (No. 898.)*

(Court of Civil Appeals of Texas. Beaumont. Jan. 24, 1923. Rehearing Denied Feb. 7, 1923.)

1. **Insurance** ⬥157—**Fire policy held not to require operation of gin during entire season.**

Where a policy insuring a cotton gin against fire was issued after the opening of the ginning season, but before the gin was in operation, the promissory warranty that the gin be in active operation during the ginning season cannot be construed as requiring it to be operated during the entire season, and does not prevent recovery for a fire which occurred during that season before the gin had been operated, but while it was being made ready for operation.

2. **Insurance** ⬥334(1)—**Agreement to keep plant closed held not warranty.**

Statements that there were wooden shutters on all window openings, and that insured agreed to keep the plant securely locked and closed when not in operation, were not more than representations, notwithstanding language in the policy which might be construed as making them warranties, where the insurer was advised that no watchman was in charge of the plant, and the premises would not be under the care of any one except when in operation.

3. **Insurance** ⬥334(1)—**Breaking open by trespassers does not breach warranty to keep closed.**

A warranty by insured that they would keep their plant closed when not in operation is not breached, where they exercised reasonable care to keep it closed by always locking it themselves and employing a neighbor to inform them if it was not closed, though at times it was broken open by trespassers.

4. **Appeal and error** ⬥930(3)—**Issue resolved in support of judgment in absence of submission.**

Where a cause was submitted to the jury on special issues, an issue arising under a warranty claimed by defendant, which was not submitted to the jury, must be resolved in support of the court's judgment for plaintiff, if there was evidence to sustain that finding.

5. **Insurance** ⬥379(2)—**False statements as to ownership, inserted by soliciting agents without knowledge of insured, do not avoid policy.**

Where there was nothing in the application signed by insured which gave him notice that the soliciting agent had no authority to waive warranties, a statement as to the ownership of the property, written into the application by the agent without the consent of insured, does not avoid the policy.

6. **Insurance** ⬥383—**Statement of agent in connection with authorized delivery of policy waives breach of warranty.**

A statement, made by an agent when he delivered the policy, as he was authorized by the insurance company to do, that the falsity of the statement in the application that applicant was the sole owner was immaterial, and that the policy would protect the joint owners, waives the breach of warranty as to ownership of the premises.

7. **Insurance** ⬥379(1)—**Statement, written in application by agent with knowledge of falsity, does not avoid policy.**

Where the agent taking an application for insurance wrote therein without asking the question of insured that the insured had never suffered any fire losses, which statement the agent then knew was false, the breach of warranty was waived if the applicant was not charged with actual knowledge of the agent's want of authority.

8. **Trial** ⬥352(5)—**Special issue as to effect of open door held to assume disputed fact.**

In an action on a fire policy, a special issue, requested by defendant, as to whether the fire would have occurred if the doors had been securely fastened on the night of the fire, was properly refused, as assuming that the doors were not securely fastened, where that fact did not appear as a matter of law from the evidence.

9. **Trial** ⬥350(4)—**Issue in action on fire policy as to effect of open doors held evidentiary and not ultimate.**

In an action on a fire policy, a requested issue as to whether the fire would have occurred if the doors had been securely fastened would have submitted an evidentiary and not an ultimate issue, where the policy was not necessarily avoided merely because the door was open.

10. **Trial** ⬥232(2)—**Charge on burden of proof held not to indicate answers which would give plaintiff judgment.**

A charge that the burden was on the plaintiff to establish the material allegations in his petition, and if he had done so the jury should answer the issues submitted in his favor, was not erroneous, as advising the jury how to answer the questions in order to give plaintiff judgment, where each issue was submitted with the instruction to answer the question as the jury might find from the evidence, to which latter instruction no objection was made.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 7, 1923.

Action by C. H. Harrell and another against the Equity Mutual Fire Insurance Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Morris & Barnes, of Beaumont, V. A. Collins, of Dallas, and Denman & Collins, of Lufkin, for appellants.

Fairchild & Redditt, of Lufkin, for appellees.

WALKER, J. Appellees instituted this suit against appellants upon a fire policy covering a gin risk in the following amounts: On a two-story frame building, $740; on fixed and movable machinery, etc., $2,000; on motors, dynamos, and other electrical equipment, etc., $750—total $3,500.

Appellants plead as their defense against said policy certain warranties and representations, which we will set out in our discussion of the issues raised thereunder.

On a trial to a jury on the following special issues, answered as indicated:

"(1) Was J. H. Alderman, or the Alderman Insurance Agency, the agent of the defendants at the time the policy was taken out in September, 1920? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(2) Was J. N. Parsons the agent of the defendant at the time the policy was issued in September, 1920? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(3) Did J. H. Alderman employment and action in relation to the policy of insurance issued by the company to the plaintiff authorize the said Alderman to act for the company in matters pertaining to said insurance policy? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(4) Did the plaintiff Harrell notify Alderman and Parsons at the time he made application for the insurance, or either of them, that the property insured belonged to Stroud and Harrell? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(5) Did Alderman notify Harrell that the policy as written would be good and all right for Harrell and Stroud, and did Alderman, as representative of the defendants, agree to waive the policy being made out to the Harrell Transfer Company instead of Stroud & Harrell? You will answer this question 'Yes' or 'No,' as you may find from the evidence. Answer: Yes.

"(6) Did Harrell acting for the plaintiffs notify Alderman or Parsons at the time he made application for insurance that the property belonged to Stroud and Harrell? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(7) Did Harrell notify or tell Parsons and Alderman, or either of them, at the time he made application for the insurance, that the property described in the policy belonged to C. H. Harrell or to the Harrell Transfer Company? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: No.

"(8) Did Harrell notify the said Alderman and Parsons, or either of them, at the time he made application for the insurance, that he might not run the gin for the season beginning in the fall of 1920? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: No.

"(9) Did Alderman or Parsons tell Harrell at the time he made application for the insurance that it would not make any difference whether he ran the gin or not? You will answer this 'Yes' or 'No' as you find from the evidence. Answer: No.

"(10) Did the fact that the gin was not running from September 9, 1920, up to the time of the fire in November, 1920, increase or decrease the probability of the gin catching fire? You will answer this 'Increased' or 'Decreased' as you may determine from the evidence. Answer: Decreased.

"(11) Did the plaintiff contemplate or intend to operate the gin during the ginning season of 1920? You will answer this 'Yes' or 'No' as you may find from the evidence. Answer: Yes.

"(12) Did C. H. Harrell, at the time he made application for insurance, give to either Alderman or Parsons the answers to the questions contained in the application for insurance? You will answer this 'Yes' or 'No,' as you may find from the evidence. Answer: No.

"(13) Did C. H. Harrell tell either Alderman or Parsons at the time he made application for insurance that he had never had a fire in any buildings in which he was interested? You will answer this 'Yes' or 'No,' as you may find from the evidence. Answer: No.

"(14) Did the defendant companies issue the policy of insurance believing from information received from Harrell that Harrell had never had a fire to anything in which he was interested? You will answer this 'Yes' or 'No' as you may determine from the evidence. Answer: Yes.

"(15) Was it a material matter or did it contribute to the burning of the gin property as to whether or not the gin belonged to Harrell Transfer Company or to Stroud and Harrell? You will answer this 'Yes' or 'No' as you may determine from the evidence. Answer: No.

"(16) Was it material to the risk, or did it contribute to the burning of the house, as to whether or not the gin was operated during the ginning season of 1920? You will answer this 'Yes' or 'No' as you may determine from the evidence. Answer: No,"

judgment was rendered for appellees. The evidence is sufficient to sustain the jury in its verdict.

Appellant's propositions present for review the following issues:

1. The written application for the insurance, signed by appellee C. H. Harrell, contained the following warranty, which was carried into the policy:

"I, or we, the applicant for insurance specified in this application hereby agree to the following covenants and warranties, and the statements and undertakings therein and agree that the breach of any one or more of said statements or undertakings shall render the entire policy issued on this application null and

void unless a waiver of said breach is indorsed on the policy in writing, and extra premium for the increased hazard is paid by the assured under the policy, when such is demanded by the company or its authorized agents."

It also contained the following warranty:

"I, or we, hereby warranty, covenant and agree, that the foregoing is a just, full and true statement of all the facts and circumstances in regard to the condition, age, situation, value and risk of the property described; and I, or we, further warrant, covenant and agree that there exists no facts or circumstances material to the risk, other than those herein stated and disclosed. I, or we, further covenant and agree that this application with its agreements, statements and answers, clauses and conditions, shall constitute a warranty on my, or our, part and the basis for and a part of any policy or policies, that may be issued hereon."

The policy contained the following conditions:

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto; and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions 'or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written and attached."

[1] The policy was for one year, from the 9th day of September, 1920, to the 9th day of September, 1921. The property covered by the policy was completely destroyed by fire on the night of November 20, 1920. Up to the time of the fire, appellees had ginned no cotton, but it was their purpose to operate the gin actively, and immediately previous to the fire had prepared the gin for active operation. It took several days to do this work. Had the plant not been destroyed, appellees would have operated it 15 or 20 or 25 days, and would have ginned 200 or 300 or 400 bales of cotton. In the fall of 1920, the cotton crop adjacent to appellees' gin was very short, and for this reason they had delayed and postponed the time for operating the gin. The ginning season at Lufkin, where this gin was situated, in the fall of 1920, opened about the 9th of August, and continued until about the 1st of January. It thus appears that the season had been opened about a month at the time the policy was issued. On these facts, we do not think appellees breached the promissory warranty, requiring

that the gin "be in active operation during the ginning season." It could not have been contemplated that the gin would be operated all the season, because, admittedly, the season was advanced a month when the policy was issued. The language of the warranty does not require an active operation all the season, but only "during the ginning season."

[2] 2. The following question and answer thereto were a part of the written application for the insurance:

"Are wooden shutters on all window openings, so plant can be securely closed? Yes. Do you agree to keep plant securely locked and closed when not in operation? Yes."

[3] While there are expressions in this policy which could be construed as making these questions and answers a warranty, we believe in the light of the entire policy they are nothing more than representations. It appears from the application that appellees advised appellant that no watchman was in charge of the plant, and that the premises would not be under the care of anyone except when in operation. From this we think it follows that there was no warranty that the plant would be securely locked and closed at all times. The evidence shows that appellees exercised all reasonable care to keep the plant closed and locked. Without their knowledge or consent, and against their watchful care, trespassers would at times enter the premises and break open the doors and windows. When this was discovered by appellees, the doors and windows would be immediately closed and the shutters nailed fast. Also appellees arranged with a near neighbor to the plant to watch it, and report to them the depredations of trespassers. Even if these questions and answers be construed as a warranty, we do not think that it was contemplated that the plant should be securely locked and closed at all times, but only that appellees would "keep the plant securely locked and closed"—that is, when opened by themselves or by trespassers, that they would again lock it and close it—otherwise the act of a trespasser or of appellees in opening the plant at a time when not in operation would avoid the policy. Delaware Insurance Co. of Philadelphia v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867.

[4] 3. The following warranty was also a part of the policy:

"If any change, other than the death of the insured, take place in the interest, title or possession of the subject of insurance * * * the entire policy shall be void."

Appellants insist that appellees permitted third parties to use the insured premises as a storage room for cement during the life of the policy. The issue arising under this warranty was not submitted to the jury. As we understand the evidence, it is very doubtful whether the premises were so used. The great preponderance of the evidence is that

the cement was stored in a building not covered by the policy. The issue, if raised, must be resolved in support of the court's judgment.

[5] 4. Appellants' sixth proposition is as follows:

"When the undisputed evidence shows that in the application, which was made the basis for issuing a policy of insurance, there was a warranty by the assured that the assured was the sole and only owner of the premises insured, and the evidence shows further that a third party owned a one-half interest in said premises at the time it was insured and at the time of its alleged loss by fire, then such a breach of warranty voids the policy, and appellants were entitled to peremptory instructions."

On the face of the application it appears that C. H. Harrell was applying for the insurance, and represented that he was the sole owner of the property to be insured. This application was in writing, and signed by him. In fact, he told the agents who took his application that the property belonged to him and A. Stroud, and the effect of his testimony is that he was applying for the insurance for himself and Mr. Stroud. The agents filled out the application themselves and in deference to the verdict of the jury we find that the answers contained in the application were not given by Mr. Harrell. From the verdict of the jury, it appears that he did not tell the agents that the property belonged to him, nor did he ask that the policy be issued to him as sole owner. Also it appears from his testimony that he did not know of the mistake made in the application until the policy was delivered to him. At the time the application was taken, the agents knew and were informed that a policy was then in force against the gin plant in favor of Harrell and A. Stroud. When the policy was delivered to Harrell, he at once discovered that it was issued to him, and not to him and Stroud, and at once called the agents' attention to the mistake. The agent delivering the policy informed him that it made no difference; that it would protect both of them. The agents who took the application for this insurance had authority to solicit the insurance, take the application, forward it to the company at Dallas, receive back the policy duly executed, deliver it to the insured, and collect the premium. They had no authority to countersign the policy. We find nothing in the application giving notice to the insured that the "agent taking the application had no power to waive the conditions of the policy," as was the case in Insurance Co. v. Harris, supra. The testimony of appellees as to the actual statement made to the agents who filled out the application was admissible, and the finding of the jury that Harrell did not make the statement that he was the sole owner of the insured property is binding on appellant, and they are es-

topped to deny it. The finding of the jury that the issuance of the policy was based on the written application signed by Harrell does not avail them as a defense. The agents taking the application had authority to represent appellants in that capacity, and statements made to them as such agents was in law the same as if made to appellants, that is, to their executive officer himself, who had authority to issue the policy. This proposition is fully sustained by Cooley's Briefs on the Law of Insurance, page 2555, as follows:

"Though under ordinary circumstances an insured who has signed an application is bound by the representations contained therein, notwithstanding they are in the handwriting of the agent of the insurer (Murphrey v. Old Dominion Ins. Co., 17 Fed. Cas. 1027), it is well settled that if the statements as written by the agent in the application do not correspond with the representations actually made by the insured, he is not concluded by them; and this is true whether the false statements were inserted in the application, through the mere negligence or mistake (Bennett v. Agricultural Ins. Co., 106 N. Y. 243, 12 N. E. 609) of the agent, or were inserted deliberately (Germania Fire Ins. Co. v. McKee, 94 Ill. 494). The rule is well stated by the Supreme Court of Alabama (Creed v. Sun Fire Office, 101 Ala. 522, 14 South. 323, 46 Am. St. Rep. 134, 23 L. R. A. 177) to be as follows: If the applicant make full and true answers to the questions contained in the application, and suppresses no material fact which it is his duty to make known, the company will not be permitted to take advantage of the carelessness, inadvertence, or misunderstanding of its agent, the insured being without fault. Upon the same principle, and for stronger reasons, the company cannot avoid its obligation if its own agent knowingly and intentionally writes down the answers differing from those made by the insured."

Under this proposition, Cooley cites Insurance Co. v. Lewis, 48 Tex. 622, which Judge Buck cited in Insurance Co. v. Thomas (Tex. Civ. App.) 178 S. W. 603, in support of the following proposition:

"It is true that it has been held that when the agent of an insurance company to whom an applicant correctly stated matters concerning which information was desired by the company makes a mistake in reducing the application to writing, which is signed by the applicant with a warranty of its correctness, and the erroneous statement is made a part of the policy, the act of the agent will operate as an estoppel to prevent the company from making the warranty available as a defense."

[6] In addition to the proposition of estoppel just advanced, the warranty as pleaded was waived. The jury found that the agent of appellant told Harrell at the time the policy was delivered that the mistake in issuing the policy to Harrell alone was immaterial, and that it would be good for both of them. This agent was in the discharge of an active duty connected with his agency,

and before the premium was paid, and at a time when Harrell had no knowledge as to the limit of the agent's authority. In insurance Co. v. Harris, supra, it is said:

"Notice of any matter to a person authorized by the general agents of an insurance company to solicit insurance, take and report applications to the general agents, deliver the policies and collect the premiums, is notice to the company."

On the authority of such an agent as was representing appellant in the delivery of this policy to waive its conditions and of the effect of his knowledge of the actual conditions under which the policy was written, Judge Brown said in Wagner & Chabot v. Insurance Co., 92 Tex. 549, 50 S. W. 569:

"There is no dispute about the fact that W. G. Tobin was the agent of the Westchester Fire Insurance Company at San Antonio and that he had full power to make the contract of insurance; that he did in fact make it, and when he issued the policy he knew that Wagner & Chabot were not the sole owners of the property and that the policy did not truly state their interest in it, but that they were agents holding it for Kloak Brothers & Co., of Cincinnati, Ohio. By issuing and delivering the policy, Tobin waived the conditions requiring that the interest of the payees named therein should be truly stated and the condition that the interest of the assured should be the unconditional and sole ownership of it. He knew that as warranties of existing facts they were false. Insurance Co. v. Ende, 65 Texas, 123; Insurance Co. v. Camp, 71 Texas, 507; Insurance Co. v. Holcomb, 89 Texas, 410; Eames v. Home Insurance Co., 96 U. S. 621.

"The ground upon which the courts hold that such conditions are waived under the given state of facts is broadly stated in Insurance Company v. Ende, cited above, by Judge Stayton in the following quotations from the authors named: 'To deliver a policy with full knowledge of facts upon which its validity may be disputed and then to insist upon these facts upon grounds of avoidance is to attempt a fraud. This the courts will neither aid nor presume, and when the alternative is to find this or find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery and is a waiver of the known ground of invalidity,' citing May on Insurance, § 497. In support of the same proposition, Judge Stayton quotes as follows: 'The insurer is estopped from setting up the breach of any condition of the policy when at the time of its issue it knew that the condition was inconsistent with the facts and the assured has been guilty of no fraud.'"

**[7] 5.** Appellants' eighth proposition is as follows:

"When the undisputed evidence shows that in the application which was made the basis for issuing a policy of insurance, there was a warranty by the assured that he, before making such application, had never suffered a loss

by fire, and the undisputed evidence shows that he had suffered two previous losses by fire, then such a breach of warranty voids the policy and appellants were entitled to peremptory instructions."

The policy and application contained the warranty on which this proposition is based, and the application contained the statement that Harrell had never suffered a loss by fire, The undisputed evidence shows that he had had two previous fire losses, but the jury found that Harrell made no such statement to the agents, and that the answer was inserted in the application without his authority. It follows from this that the mistake of the agents was the cause of the error in the application. Under the authority of the decisions cited supra, appellants are estopped to deny the effect of the jury's finding. While the issue was not submitted to the jury, the evidence is sufficient to sustain a finding that one of the agents representing appellant knew of Harrell's fire record, and, had the question been asked him, and had he stated that he had had no previous fires, this agent would have known the falsity of the answer, and that it would have been called to his attention and would have been actively in his mind at the time the application was being taken and at the time the policy was delivered. As appellee was not visited with actual knowledge of the extent of the authority of this agent, we believe the actual knowledge of the agent, as just stated, would be sufficient to waive the breach of the warranty relied on. Wagner v. Ins. Co., supra.

**[8] 6.** The court did not err in refusing the following issue requested by appellants:

"If the doors of the ginhouse, which was covered by the insurance policy herein sued upon, had been securely fastened on the night of the fire, would it have occurred?"

**[9]** This issue was a charge on the weight of the evidence, and assumed that the doors of the ginhouse were not securely fastened on the night of the fire. This did not appear as a matter of law from the evidence. There is no assignment that the charge was sufficient to call the court's attention to the issue, and that he erred in not submitting a proper issue. Again, we believe it submitted an evidentiary fact, and not an ultimate issue. If we have correctly construed the conditions of the policy on which this issue was based, an affirmative answer to the question requested would not have avoided it.

**[10] 7.** Appellants complain of the following charge:

"You are instructed that the burden is upon the plaintiff to establish the material allegations in his petition by a preponderance of the evidence, and if he has done so, you will answer such issues as may be submitted to you in his favor, but if he fails to show by a preponderance of the evidence you will answer such issues against him."

No error is shown under this assignment. The many questions submitted to the jury were each followed by the following instruction:

"You will answer this question 'Yes' or 'No' as you may find from the evidence."

This charge was not excepted to, nor was any additional charge requested. The charge as given was not subject to the criticism that it advised the jury how to answer the questions in order to give appellees judgment.

8. We have carefully examined appellants' assignments complaining of the argument of counsel. These assignments do not present reversible error.

A large portion of the briefs, both of appellants and of appellees, is addressed to the anti-technicalities statutes of this state, to wit (Vernon's Sayles' Ann. Civ. St. 1914) articles 4874a, 4874b, and 4947. As we believe the judgment of the trial court should be affirmed upon the propositions above advanced by us, we refrain from discussing the application of these statutes to the facts of this case.

Affirmed.