RUPPEL et al. v. THE MISSOURI GUARANTEE, SAVINGS AND BUILDING ASSOCIATION, Appellant.

### Division One, December 11, 1900.

1. **Building and Loan Associations: BIDS: PREMIUMS.** The funds of a building and loan association must be offered to the stockholders without restriction as to the premium, affording to each stockholder entitled to borrow, the opportunity of borrowing at the lowest rate he can obtain in competition with other stockholders. The board of directors have no right, under the statute, to fix a minimum rate of premium, or to regulate the premium by private contract with the borrower.

2. ——: ——: IN WRITING. It is not necessary that the borrower be present when the loan is awarded, but it is sufficient if his bid be present in writing and be brought to the attention of the board of directors. And if his written bid is the highest and best bid, although the only one, he is entitled to have the loan awarded to him.

3. ——: PREMIUMS: USURIOUS. Unless the premiums which the borrower agreed to pay are fixed arbitrarily by the directors, or by private agreement between him and the association, they can not be considered in determining whether or not the loan was usurious.

4. ——: CANCELLATION OF MORTGAGE. The court can not decree the cancellation of a mortgage until plaintiffs pay what they owe thereunder. The mere fact that plaintiffs often offered to pay defendant what the court found they owed him, is no ground for cancelling the mortgage until the payment is actually made.

5. **Tender of Payment:** EFFECT. Tender of payment, if kept good, will stop the running of interest, but only payment will extinguish the debt or justify the cancellation of the mortgage securing it.

Appeal from Lawrence Circuit Court.—*Hon. J. C. Lamson,*
Judge.

REVERSED AND REMANDED.

*Morton Jourdan* for appellant.

(1) The portion of defendant's answer stricken out constituted a good defense. Springfield Eng. Co. v. Donovan, 147 Mo. 622; Hughes v. Ass'n (Tenn.), 46 S. W. Rep. 362; R. S. 1889, sec. 2812. The application, written bid, and the action of the board of directors, as pleas, constituted a good defense, and show a full compliance with the law. (2) The oral testimony of plaintiff as to contents of application, declarations and statements of agent were inadmissible. Tracy v. Iron Works, 104 Mo. 199; Lumber Co. v. Kreeger, 52 Mo. App. 422; Williams v. Edwards, 94 Mo. 451. (3) Under

the evidence there was no tender.   This being true, the judgment should have been for defendant.   Henderson v. Cass Co., 107 Mo. 50; Kitchen v. Clark, 1 Mo. App. 430. (4) Under the pleadings the judgment should have been for defendant. The debt was not due, and the plaintiff was therefore not entitled to an accounting.   Fisher v. Patton, 134 Mo. 32; Brown v. Archer, 62 Mo. App. 291.   He was not entitled to an accounting; for his stock had not matured.   Bertche v. B. and L. Ass'n, 147 Mo. 343; Sweeney v. B. and L. Ass'n (Tex.), 26 S. W. Rep. 292; Abbott v. B. and L. Ass'n, 85 Tex. 220; Laws, Mo. 1895, p. 105, sec. 15.   (5) The judgment can not stand.   The plaintiff admitted an indebtedness of $1,100.   He made no tender.   He made no payment.   He made no deposit.   He made no payment into court.   If it was right to find against defendant upon the issues, the court should, upon the confessed indebtedness of $1,100 from plaintiff to defendant, have required plaintiff to pay the amount into court and then enter the judgment cancelling the note, and discharging the lien upon the real estate.

*H. H. Bloss* for respondent.

(1) The part of the action stricken out is simply a dissertation of reasons why it was not necessary to comply with a plain and positive statute regulating the manner in which funds of the association could be loaned.   R. S. 1889, sec. 2812; Price v. Empire Loan Ass'n, 75 Mo. App. 551; Moore v. Bldg. Ass'n, 74 Mo. App. 468; Miller v. Mo. Guar. Savgs. & Bldg. Ass'n, 3 Mo. App. Rep. p. 346; McCauley v. Bldg. Ass'n, 37 S. W. Rep. 212.   (2) A technical tender of the money was not necessary under the pleadings and evidence in this case.   This action is an equitable suit to ascertain the amount due on a complicated building and loan mortgage.

The authorities cited by appellant have reference to a legal tender in an action at law. The rule of tender in the case of mortgages of the kind in controversy is different. Thornton & Black on Bldg. Ass'n, sec. 292, p. 301. The rule of a legal tender does not apply in equitable actions. Kline v. Vogel, 90 Mo. 239. And if this was a case where an actual tender was necessary, there was a waiver of such tender on the part of appellant. For appellant advised respondent that it would not accept $1,100 in satisfaction of their debt. This would be a waiver in an action at law where the rule is strictly enforced. Johnson v. Garlichs, 63 Mo. App. 578; Enterprise Soap Works v. Sayers, 55 Mo. App. 15; Howard v. Deimer, 41 Mo. App. 49. (3) Appellant's next contention to the effect that respondent was not entitled to an accounting because the stock had not matured would be correct if this loan was not usurious. When a contract is shown to be usurious, courts will not compel the borrower to continue it for years in an endeavor to mature the stock. McCauley v. Workingmen Bldg. Ass'n (Ken.), 37 S. W. Rep. 215; Miller v. Mo. G. S. & B. Ass'n, 3 Mo. App. Rep. 346; Price v. Empire Loan Co., 75 Mo. App. 556.

VALLIANT, J.—This is a suit in equity for an accounting as to the amount due on a deed of trust given by plaintiffs to defendant, and for a cancellation of the deed on paying the amount ascertained to be due. Defendant corporation is a building association organized under the laws of this State, and plaintiff L. Ruppel is a borrowing stockholder; his co-plaintiff is his wife, who according to the petition is the owner of the mortgaged land.

It appears from the pleadings that in June, 1892, plaintiff L. Ruppel subscribed for $3,500 of stock in defendant company and borrowed that amount from defendant, pledging

the stock and executing with his wife the deed of trust in question to secure the loan. The note or obligation which he signed to evidence the debt, was of the kind usual in such transactions with building associations, wherein he promised to pay the defendant, on the 20th of each month, for a period of one hundred months, $17.50 as dues on the stock, $31 interest, and $14, "being the premium for the preference and priority of loan," on the amount borrowed. The petition avers, that the money was not put up at public auction as the statute, section 2812, Revised Statutes 1889 (now sec. 1362, R. S. 1899), requires; that there was no competitive bidding, but that the usual monthly payments above named as for dues, interest and premium, amounting to $52.50 a month, were but arbitrary amounts fixed by agreement between the borrower and lender and put in that form to evade the usury laws of the State; that for a period of fifty-nine months, beginning wth June, 1892, ending May, 1897, plaintiff paid the $52.50 monthly, amounting in all to $3,097.50, so that on June 8, 1897, there was due on the mortgage only $961.53 by plaintiffs' count, but that defendant claims $2,800 still due; that plaintiff had offered to pay $1,109.25 for a settlement and cancellation of the indebtedness, but defendant had refused the offer; that plaintiffs were ready and willing to pay whatever the court upon accounting should find to be due, and prayed for an accounting and for a satisfaction of the deed of trust on payment of the amount so ascertained.

The answer admitted that plaintiff L. Ruppel became a stockholder to the amount named, borrowed the $3,500, and executed the obligation as set out in the petition, but denied that the loan was not made according to the requirements of the statute named, or that the $52.50 was merely the amount agreed to be paid monthly for one hundred months for the loan. Admitted that plaintiff had paid $17.50 monthly for

fifty-nine months, amounting to $1,032.50 as for dues on the stock subscribed for, and $21 monthly for fifty-eight months and one payment of $6.99, amounting to $1,224.99, as for interest, and $14 a month for fifty-eight months and one payment of $4.66 amounting to $816.66 as for premiums, and denied all the other allegations.

The answer then goes on to state in effect that when the loan was made the fund was not in fact put up at public auction, because there were no bidders present, but the transaction was as follows:    Plaintiff applied for the loan in writing, and in the application bid so much for the preference; the application was received and opened by the board of directors in a regular meeting for such purpose; the plaintiff was not present and no one was present except the directors themselves; the plaintiff's bid was the only one' there, and thereupon the board of directors declared it the highest and best bid and awarded the loan to him and that he accepted the money on those terms, and executed the papers in question. The answer dwells at much length on the circumstances to show that the transaction was a substantial compliance with the statute, and also that plaintiffs are estopped to question it.    The answer also makes the point that if the transaction should be regarded as not in compliance with the statute as to putting the fund up to public auction, then it is still not usurious if the payments are spread, as by contract they were to be, over a term of one hundred months, and that plaintiffs have no right to stop the payments at the end of 59 months and thus estimate it as usury.

The court, on motion of plaintiffs, struck out all that part of the answer attempting to show a substantial though not a literal compliance with the statute and estoppel, and that the calculation should cover the whole period of a hundred months, to which defendant excepted.

On the trial the plaintiff L. Ruppel testified in effect that he was not present at the meeting at which the loan was made and did not in open meeting bid for the money or authorize any one to bid for him; that he had nothing to do with fixing the rate of premium and did not know who did; that his application for the loan was in writing, and that in April, 1897, he offered to pay defendant $1,100 in full of the obligation, and it was refused; did not actually tender the money but was prepared to do so and would have done so but for the fact that defendant refused the offer; was then (at the trial) ready and willing to pay that amount or any sum the court should find due to defendant. When it appeared that the application for the loan was in writing, defendant objected to the oral testimony as to the terms of the offer, but the objection was overruled and defendant excepted. This was substantially all the evidence on the only disputed fact in the case, that in relation to the putting of the fund up at auction.

The findings and decree were to the effect that the money was not put up at auction as the law requires; that the loaning of the money in the manner it was done was a mere device to evade the usury law; that plaintiffs had received in the loan $3,500 from defendant, had paid it $52.50 a month from June, 1892, to May, 1897, in all $3,097.50, had then offered to pay the full amount due; that plaintiffs were entitled to an accounting, and upon such accounting the court found that plaintiffs owed defendant $1,100 which at the trial they offered to pay in full satisfaction of their obligation, but that defendant had refused; it was therefore decreed that defendant proceed immediately to satisfy the mortgage of record, and if it was not done in ten days it should be adjudged satisfied by the decree and be null and void, and it was further decreed that the defendant pay the costs of the suit. From that decree the defendant appeals.

I.    The theory upon which the case was decided is manifested by the striking out of that portion of the answer which showed that although the ceremony of offering the money at auction had not been observed because there were no members present to bid, yet that it was a meeting at which all members who desired to borrow, and were entitled to do so, were at liberty to attend and bid; that the plaintiff's bid was there in writing, and the only bid at the time for the money; that it was read by the board of directors and declared to be the highest and best bid, was accepted, and the loan awarded accordingly.

The trial court in striking out that part of the answer adhered too closely to the letter of the statute.    The correct interpretation is given this statute by our Kansas City Court of Appeals in Moore v. B. & L. Ass'n, 74 Mo. App. 468, and Price v. Empire L. Ass'n, 75 Mo. App. 551, viz.: that the funds of the association must be offered to the stockholders without restriction as to the premium, affording to each stockholder, entitled to borrow, the opportunity of borrowing at the lowest rate he can obtain in competition with other stockholders, and the board of directors have no right to fix a minimum rate of premium, or to regulate the premium by private contract with the borrower.    In the first of those cases the association had adopted a by-law fixing a minimum rate of premium, and in the second, while there was no such by-law, yet the premium was fixed by arbitrary demand of the board of directors.    In the Moore case the officers of the defendant company seem to have attached importance to the ceremony of public auction, and the secretary went through the form of crying the fund off and bidding it in for the borrower, whose written application he held, but whose application was in fact restricted in its bid by that by-law.'    The court, per GILL, J., said:    "It is the merest trifling to contend that the plaintiff

secured this loan in competitive bidding. The so-called auction of the loan was a mere pretense; the price therefore was fixed by a prior agrement and in accordance with the illegal by-law which unlawfully declared a minimum premium or price of preference." There the court saw through the mere form and decided the case according to the reality.

But in the case at bar, if that portion of the answer stricken out is true, the empty ceremony was omitted, but the real bid of the plaintiff was there in writing, and there is nothing in the evidence to justify the conclusion that the bid was constrained by any arbitrary action of the defendant. The plaintiff as a stockholder was entitled at that meeting to bid for the fund, and if his was the highest, or the only bid, he was entitled to have the loan awarded to him. He need not have been present, but it is sufficient that his written bid was there, and brought to the attention of the board of directors. [Springfield E. & T. Co. v. Donovan, 147 Mo. 622.]

In Miller v. Mo. G. S. & B. Ass'n (this defendant), 83 Mo. App. 669, the evidence went deeper into the facts than in the case at bar, and the trial court there found as a fact that the premium was fixed by arbitrary rule of the board of directors, and held the transaction to be in violation of the statute, and the ruling was upheld in the appellate court. But here the trial court cut off the inquiry into the matter by striking out that part of defendant's answer, and the case rested on the testimony of Ruppel that he was not present and did not personally bid in an open meeting and did not know who fixed the rate of premium. The court's ruling on that point was erroneous. If the facts were as pleaded they constituted a complete defense to the plaintiffs' suit.

II. But the court after finding that there was $1,100 due the defendant on the plaintiffs' own theory and showing, decreed that the defendant's security be canceled without re-

quiring the plaintiffs to pay what they acknowledged they owed, and what they offered in their bill to pay. That is contrary to the course of equity jurisprudence. When the plaintiffs seek the aid of a court of equity to relieve them of what they consider an usurious contract, the court will give them relief only on terms of equity and fair dealing. To allow the plaintiffs to retain what they justly owe and compel defendant to cancel its mortgage, is a transaction that can not be commended in the forum of good conscience. The mere fact that defendant refused what the plaintiff offered to pay is no excuse for plaintiffs to keep what does not belong to them. Even a court of law would not tolerate that act; in law a tender to be available must be kept good. [Berthold v. Reyburn, 37 Mo. 587; St. L., etc., Ry. v. Clark, 119 Mo. 357, l. c. 372; Voss v. McGuire, 26 Mo. App. 452.] The fact that a debtor has once tendered the amount due and it has been refused, may, if it is kept good, stop the running of interest, but it will not extinguish the debt, and if it has not been kept good it will not even stop the running of interest. But even at law the plaintiffs' offer in this instance did not amount to a tender, because it was not unconditional. It was an offer to pay so much on condition that defendant would receive it in full satisfaction of its demand, while the defendant was claiming that a larger sum was owing. [Henderson v. Cass Co., 107 Mo. 50.] The fact that Ruppel while on the witness stand said that he was willing to pay the defendant whatever the court should find to be due, could have no legitimate effect on the finding and decree; the case should be adjudged according to the rights of the parties when the suit was filed.

Courts of equity deal with the subject of tender on the broad principles of justice. When a plaintiff comes into court asking equitable relief, if the relief is granted it will be upon such terms as are just and equitable. Generally the

VOL. 158, OCTOBER TERM, 1900.    623

Ruppel v. Mo. Guar. S. & B. Ass'n.

plaintiff is required to signify in his bill a disposition to do what is right, but whether he so signify or not the court will require him to do so as a condition of relief granted. In Landis v. Saxton, 89 Mo. 375, l. c. 383, this court, per BLACK, J., said: "Authorities cited do say that where a tender has been made of the amount due, it discharges the lien, still, without regard to the statute, a court of equity would not decree affirmative relief, such as the release or satisfaction of a mortgage or deed of trust or other lien, without payment of the amount due at the date of the tender..... Until plaintiff does make such payment he can not have the deed of trust satisfied as prayed for in his petition." In Kline v. Vogel, 90 Mo. 239, l. c. 245, per SHERWOOD, J., it is said: "So, also, if a borrower of money on usurious interest seeks the cancellation of the instrument which evidences the debt, equity refuses its aid unless upon the condition that payment be made the lender of what is *bona fide* due him." In Hudson v. Glencoe, 140 Mo. 103, l. c. 118, this court per MACFAR-LANE, J., said: "Our opinion is that a tender of the amount due on a mortgage debt, made after default, should not on principle discharge the mortgage, and should have no greater effect on the security than it has on the debt itself."

If, therefore, upon a retrial it should appear that the premium which the plaintiffs agreed to pay was fixed by the directors arbitrarily, or by private agreement only between the plaintiffs and defendant, and not in accordance with the statute, section 2812, Revised Statutes 1889, as hereinabove interpreted, and that therefore the transaction was usurious, the court should determine the amount lawfully due the defendant and decree the plaintiffs a cancellation of their mortgage upon condition that they pay the defendant the amount so found to be due. But unless under the law as herein ex-

pressed the transaction is found to have been usurious, the decree should be for the defendant.

The judgment is reversed, and the cause remanded, to be retried according to the law as herein laid down.

All concur.