MANHATTAN LIFE INS. CO. v. STUBBS. (No. 7756.)

(Court of Civil Appeals of Texas. Galveston. Oct. 16, 1919. On Motion for Rehearing, Dec. 13, 1919.)

1. INSURANCE ⬰602—TENDER ⬰14(5) — TENDER NOT UNCONDITIONAL DOES NOT RELIEVE FROM LIABILITY FOR DELAY.

Where, on the maturity of a 15-year endowment policy, the amount due thereon was in dispute, company's act in sending to assignee of policy draft for its admitted liability thereon, payable, however, to both original insured and assignee, with payment further conditioned upon the execution by them both of a full release of any further claims or demands on account of the policy, was not such an unconditional tender of its admitted debts as assignee was entitled to, and the company was thus left liable for delay under Rev. St. 1911, art. 4746.

2. INSURANCE ⬰90—EFFECT OF POLICY PROVISIONS ON AGENT'S AUTHORITY TO REPRESENT AMOUNT OF FUTURE DIVIDENDS ON ENDOWMENT POLICY.

Where express limitation on agents' authority that no statements or promises by them, unless written on the application, shall bind the company, was contained in an endowment policy itself and the application therefor, assignee of the policy was bound thereby, and could not claim to have relied upon any apparent authority in agents to commit the insurer by their individual statements as to the amount of dividends there would be on the policy at its maturity, where no such statements appeared in application or policy.

3. INSURANCE ⬰602—DELAY IN PAYING ENDOWMENT POLICY.

Where, on maturity of $5,000 endowment policy, assignee of the policy claimed about $1,200 extra dividends, while insurer admitted, in addition to the $5,000 face of policy, dividends due to extent only of $90, assignee was entitled to have penalty and attorney's fee for delay in payment predicated upon the $5,090, which was adopted by the court, rather than upon the $1,200 involved in dispute between the parties, where no unconditional tender was ever made of the $5,090, since, by reason of lack of unconditional tender of what was admittedly due, the assignee was forced into the courts in order to get, not only the disputed, but also the undisputed, portion of his claim.

On Motion for Rehearing.

4. INSURANCE ⬰602—PENALTIES ON DELAYED PAYMENT OF INSURANCE; "LOSS;" "LIFE INSURANCE."

The survival of insured for the time limited in an endowment policy is a contingency involving a loss to the insurer, within Rev. St. 1911, art. 4746, imposing attorney's fees and penalties against the insurer for delaying payment after "loss" in case of life insurance, as well as other named kinds of insurance; endowment insurance being life insurance, since the amount of loss depends on the duration of life, and the word "loss" being used in the statute as a synonym of liability.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Life Insurance; Loss.]

Appeal from District Court, Galveston County; Robert G. Street, Judge.

Suit by James B. Stubbs against the Manhattan Life Insurance Company to recover on an endowment policy. Judgment for plaintiff for less than sum asked, and both parties appeal. Affirmed.

Seay & Seay, of Dallas, for appellant.
Charles J. Stubbs and F. Spencer Stubbs, both of Galveston, for appellee.

GRAVES, J. Appellant, Manhattan Life Insurance Company, of New York, on December 26, 1902, issued its life insurance policy No. 131054 for $5,000 to Charles J. Stubbs. The annual premium was $353.40; it was known as an endowment or survivorship policy, entitled to dividends or shares of the surplus at the end of the 15-year period, and matured on December 26, 1917. The policy was, on January 9, 1903, for value, by Charles J. Stubbs assigned to James B. Stubbs, appellee here, after the first premium had been paid by the former. The company was promptly notified of the assignment and furnished a duplicate.

Ira F. Collins, the agent who solicited the insurance and delivered the policy, represented to Charles J. Stubbs, the insured, that the dividend at the end of 15 years would amount to $1,215, furnishing his written statement with figures to that effect, and if insured availed of the option which carried with it the dividend, he would receive the sum of $5,000 plus $1,215. The appellee

before paying the second premium (the first having been paid by Charles J. Stubbs), corresponded with A. A. Green, Jr., manager of the Southwestern department of the insurance company, at Dallas, Tex., regarding the dividends and other rights under the policy. He had refused to pay the second premium and had caused to be returned to Mr. .Green the official receipt, which had been sent through a bank. Mr. Green, the company's manager, on December 31, 1903, wrote appellee in response to his letter, and, among other things, stated to him:

"It is true the rates on this policy are high, but you will remember we had some difficulty in getting the company to issue the policy. It is a 15-year endowment policy. If the assured is living at the end of 15 years, the policy is worth its face value in cash, increased by the dividend additions, which will amount to about $1,200 or $1,300."

The policy and application, among others not deemed material, contained these provisions:

"That in the distribution of surplus or apportionment of dividends where the policy calls therefor, the principles and methods then in use by the company in its determination of the amount apportioned to any policy issued upon this application shall be, and are hereby adopted and accepted." "That no statements or promises of any agent of the company, unless written upon this application, shall be binding upon the company, nor shall any alteration of, or addition to, the terms and conditions contained in the application or the policy, be binding, unless in writing and signed by the president or secretary."

Before the policy matured in December, 1917, the company notified Mr. Stubbs that the dividends thereon upon the date of its maturity amounted to only $90.19, and sent him its draft for $5,090.19, being the face value of the policy with this sum for dividends added. The draft was made payable, however, to both Charles J. and James B. Stubbs, and its payment was further conditioned upon the execution by them both of a full release of any further claims or demands upon the part of either on account of the policy. This tender in like manner was again made on January 22, 1918. On both occasions James B. Stubbs returned the draft to the company, and stated that he would not accept it, because of the unfulfilled promises and statements of its agent, Collins, and Southwestern manager, Green, that he would get over $1,200 in dividends, instead of the $90.19 now tendered. In so declining, however, he offered to accept the face value of the policy, $5,000, and then adjust or litigate as to the dividends; but the insurance company declined to do this and refused to pay the $5,090.19 without the full release above referred to.

James B. Stubbs then filed this suit upon

216 S.W.—57

the policy, praying for the amount due thereunder, which he alleged to be not less than $6,200, for 12 per cent. penalty and reasonable attorney's fees, under Revised Statutes, art. 4746, together with 6 per cent. interest from the date the policy matured. He declared upon the above-mentioned representations as to the amount of the dividends made to Charles J. Stubbs by the local agent, Collins, at the time the insurance was taken out, and to himself by the department manager, Green, at the time he paid the second premium thereon, and averred that but for reliance thereon the insurance would never have been contracted for originally nor continued by payment of the second and succeeding premiums. There were also allegations in the alternative which it is not thought necessary to mention.

In answer, the insurance company denied knowledge of any such representations charged to have been made by its agents, averred that they had no such authority, and also pleaded the above-quoted provisions of the application and policy. At the same time, on June 19, 1918, it tendered into court, by turning the money over to the clerk, the sum of $5,090.19, conditioned upon its being in full settlement of the appellee's demands.

Upon the trial, the court, after overruling exceptions of both parties, rendered this judgment:

"The court is of the opinion that the evidence fails to show any authority on the part of the soliciting agent, or general agent, of the defendant to bind the company by agreement or promises that the company would pay a certain amount as dividends, and it is adjudged by the court that the plaintiff recover nothing as dividends, except $90.19 hereinafter allowed, and finds that the plaintiff is entitled to recover of the defendant the sum of $5,090.19. The court is of the further opinion that no legal tender was made by the defendant to the plaintiff herein of said $5,090.19 until June 19, 1918.

"The court further finds that plaintiff was entitled to 6 per cent. interest on the $5,090.19 from December 27, 1917, until June 19, 1918, which the court finds to be, upon agreed calculations, $150.

"The court is further of the opinion that plaintiff is entitled to recover penalties of 12 per cent. on said $5,090.19, which totals the sum of $610.82.

"The court is of the further opinion that the plaintiff is entitled to recover attorney's fees, as provided by said statute, and finds that $1,000 would be reasonable attorney's fees in this case.

"It is further ordered, adjudged, and decreed by the court that plaintiff may withdraw from the registry of the court the said sum of $5,090.19, and the clerk of this court is hereby ordered to pay said amount to plaintiff, but such payment not to be in full of plaintiff's claim against defendant.

"It is further ordered that, upon the plaintiff withdrawing said amount of $5,090.19, said judgment shall be credited with such amount;

and the remainder thereof shall bear interest at the rate of 6 per cent. per annum until paid.

"To that part of the foregoing as to dividends in excess of $90.19 plaintiff excepts, and in open court gives notice of appeal.

It is therefore ordered, adjudged, and decreed that James B. Stubbs do have and recover of and from the defendant, Manhattan Life Insurance Company, of New York, the sum of $6,851.01, together with interest thereon from this date at the rate of 6 per cent. per annum until paid."

Both parties complain upon 'appeal—the insurance company at having to respond for the penalty, attorney's fee, and costs of suit; Mr. Stubbs at being required to accept less in dividends than the agents represented to him would accrue. After giving the helpful briefs and arguments presented most careful consideration, this court is unable to hold that a different judgment should have been rendered and directs the affirmance of that entered below.

[1, 2] Under the undisputed evidence we conclude, upon the one hand, that appellant's prior to suit offer to pay was not such an unconditional tender of even its admitted debt of $5,090.19 as the appellee was entitled to, thereby leaving it subject to liability for delay under article 4746, Revised Statutes of Texas. 2 Greenleaf (15th Ed.) § 605; Flake v. Nuse, 51 Tex. 98; Continental Ins. Co. v. Busby, 3 Willson Civ. Cas. Ct. App. § 103; 38 Cyc. 154, 155; 28 A. & Eng. Ency. Law (2d Ed.) 33; Ruppel v. G. S. & Bldg. Ass'n, 158 Mo. 613, 59 S. W. 1000; American Digest, Century Edition, vol. 45, p. 2847. Upon the other, that the appellee was bound by the express limitations upon the authority of the agents, contained in the policy itself and the application therefor, of all of which he had or was affected with notice, and was therefore in no position to rely upon any apparent or ostensible authority in the agents, Green and Collins, to commit their principal to their individual statements that the insured would at maturity receive a certain amount in dividends; none of the statements appearing either in the application or policy. Delaware Insurance Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867; Sovereign Woodmen of the World v. Lillard, 174 S. W. 619; Equitable Society v. Carpenter, 184 S. W. 585.

The appellee made no attempt to show that the policy was in fact entitled to carry more than the $90.19 in dividends, but relied in this feature of his case upon proof that the agents promised him over $1,200 in dividends, contending that the company was consequently and accordingly so obligated. While he himself testified that he "felt reasonably sure" of having upon its receipt made several copies of Green's previously quoted letter of December 31, 1903, declaring what the increased dividend would be, and of having sent one of these "direct to the Manhattan Life Insurance Company, of New York," he admitted never having gotten a reply or acknowledgment of its receipt; while the general officers of the company testified without dispute that neither the company nor its officers knew of any such representations, nor did the agents named have any authority to make them.

[3] While the conclusions already stated essentially determine, we think, the merits of the appeal upon both sides, the appellant's further contention that there was never more than $1,200 involved in the litigation—that is, the amount of additional dividends claimed by the appellee—and that, if assessed at all, the penalty and attorney's fee should have been predicated upon that sum, rather than on the $5,090.19 adopted by the court, may briefly be referred to. The position is not thought to be tenable. The facts show that appellee never in reality refused to accept the $5,090.19 offered him, but declined to accede to the conditions coupled with it, that his assignor, Charles J. Stubbs, who was known to the appellant to have no interest in the policy, join with him in receipting for that sum as in full satisfaction of all claims either might have against the company. Indeed, as previously recited, he offered to accept that amount of money and then adjust or litigate as to the balance he claimed; but this the company declined, and so in effect forced him into the courts to get what it admitted owing him. Under the authorities above cited, we think he was entitled to an unconditional tender of the sum admittedly due, in the absence of which he was within his rights in refusing the tender as made, and was entitled to have the penalty and attorney's fee predicated upon the amount then found to be due.

All other matters presented have been considered, but none of them, in our opinion, point out in behalf of either party prejudicial error. The judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

[4] A contention of the insurance company not specifically mentioned in the former opinion was its insistence that the happening of the contingency it had insured against —that is, Mr. Stubbs' having survived the lapse of the 15-year period—did not involve a "loss" within the meaning of R. S. art. 4746. Our view upon this question is so well and succinctly stated in the brief of the appellee that the liberty of adopting this discussion of it is here taken:

"The judgment was not contrary to the law and evidence, and the litigation did involve a loss that is contemplated or defined by the statute invoking attorney's fees and penalties against insurance companies. R. S. art. 4746. The statute provides that 'in all cases where a

loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent. damages and reasonable attorney's fees.'

"If the company's liability to pay the amount due under its policy does not constitute a loss within the meaning of the statute, it would not have been a loss in case of the death of the insured before the end of 15 years. It is uniformly held that endowment insurance is life insurance. 25 Cyc. 698; Briggs v. McCullough, 36 Cal. 542, and other cases cited in 25 Cyc. The amount of loss to be paid depends upon the duration of life.

"The statute does not mention an endowment policy, but does a life policy, which was evidently intended to include any form of insurance upon lives. The fact that it might mature in the lifetime of the insured does not render it any the less life insurance. The word 'loss' is often used in insurance policies as signifying the liability of the insurer."

See, also, N. L. S. Ins. Co. v. Gomillion, 178 S. W. 1050, where the death of live stock was recovered for as being a loss within the purview of this article, and R. S. art. 4724, defining life, health, and accident insurance companies.

In a word, we conclude that, although the character of the statute be penal and its purpose punitory, it would neither be too liberal nor inconsistent with an effectuation of its objects to say that the word "loss" is therein used as a synonym of liability.

Unconvinced of error in the original disposition of the cause, the motions of both litigants for rehearing have been refused.