## DUNKEN v. ÆTNA LIFE INS. CO.
## (No. 6168.)

(Court of Civil Appeals of Texas. Austin. March 10, 1920. On Motion for Rehearing, April 28, 1920.)

1. Insurance ⬥388(4)—Waiver of forfeiture presumed from slight circumstances.

As the law abhors forfeiture, it will seize on slight circumstances to show that an insurance company has waived compliance with the provisions requiring prompt payment of premiums, and in such case conduct with respect to other premiums than those the failure to pay which is relied on as constituting a forfeiture may be considered.

2. Insurance ⬥371—No act by party asserting waiver is necessary.

Where it is claimed that an insurer waived a forfeiture, no act by the insured is necessary; the waiver being essentially unilateral in character, and depending only on the acts and conduct of the insurer.

3. Insurance ⬥371—Waiver of forfeiture need not be supported by consideration.

Waiver of forfeiture of provisions in a life policy need not be supported by consideration or based on estoppel.

4. Insurance ⬥668(15)—Waiver of forfeiture for nonpayment of premium held for jury.

In an action on a life policy, evidence *held* sufficient to go to the jury on the question of waiver of forfeiture for nonpayment of premiums.

5. Insurance ⬥141(3) — Acknowledgment of receipt of premium conclusive.

An acknowledgment of receipt of the first premium contained in a life policy is conclusive, and will prevent the insurer from asserting invalidity of the policy delivered on ground of nonpayment, although the rule does not go so far as to prevent the insurer from recovering the amount actually due for premiums.

6. Insurance ⬥668(3)—Whether policy acknowledging payment of premium was delivered held for jury.

Whether a life policy acknowledging payment of premium was delivered, so as to es-

top the insurer from asserting invalidity of the policy because of nonpayment of the first premium, *held,* under the evidence, for the jury.

**On Motion for Rehearing.**

7. **Insurance** ⟲═372—**Life company may waive provision that soliciting agent shall have no power to change terms of policy.**

Notwithstanding Rev. St. 1911, art. 4968, a life company may waive provision that a soliciting agent shall have no power or authority to waive or change the terms of a policy, and waiver may result by acts of such agents authorized or acquiesced in by the officers.

8. **Insurance** ⟲═664—**Evidence of transactions as to other policy admissible on waiver.**

Where two original policies were applied for and issued at the same time, the two policies cannot be deemed so unrelated that past dealings with regard to waiver or forfeiture for nonpayment of premiums when due would be inadmissible, upon the question of intent to later waive the forfeiture of either policy, and of another policy to which one of them was intended to be converted.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Action by Mrs. Pearl Stone Dunken, administratrix, against the Ætna Life Insurance Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

W. E. Spell, A. D. Sanford, and Taylor, Forrestor & Stanford, all of Waco, for appellant.

W. J. Moroney, of Dallas, for appellee.

BRADY, J. We take the following statement of the case from appellee's brief:

"The suit involved two life insurance policies for $10,000 each, issued by defendant company on the life of W. J. Dunken, who died on June 1, 1916, one policy being No. 98322, a 7-year convertible term policy, the other being No. 152775, a 20-pay commercial policy. Both policies were payable to the estate of the assured. The suit was brought by Mrs. Pearl Stone Dunken, the surviving widow, as administratrix of the estate of W. J. Dunken, deceased. Plaintiff alleged that the defendant company undertook to convert the term policy into a 20-pay commercial policy, and that the conversion had been effected and policy 152775 had been issued and delivered in lieu of No. 98322, and was in force at the time of W. J. Dunken's death. Plaintiff further pleaded in the alternative that, if the conversion had not been completed and the new policy a binding obligation, then the term policy was still in force, as all parties understood the old policy was to remain in force until the new one became effective. The case was tried first January 25, 1917, in the court below, the Hon. Geo. N. Denton presiding, and on the verdict of a jury judgment was rendered for plaintiff for $14,180.70. On appeal this honorable court reversed and remanded the case. On April 28, 1919, the case came on for trial again, Hon. E. J. Clark presiding, who had been appointed to fill the vacancy created by the death of Judge Denton, and after the evidence was all in, on motion, the court instructed a verdict. Judgment was rendered for defendant. Plaintiff filed motion for new trial, which on May 13th was overruled and notice of appeal given. On June 2, 1919, plaintiff filed appeal bond, which was duly approved, and the case is presented to this honorable court upon the error of the trial court in instructing a verdict for the defendant."

**Opinion.**

As indicated in the foregoing statement, this is the second appeal of the case, and the opinion of this court upon the first appeal is reported in 204 S. W. 241. The court reversed a judgment against the insurance company upon policy No. 98322, which will be termed the first policy, because of an improper charge of the trial court, and also because of the exclusion of certain testimony offered by the insurance company, and the error of the trial court in limiting certain testimony introduced by the company.

Upon the former appeal this court was asked to reverse and render judgment for the insurance company upon the ground that there was no testimony tending to show waiver as to either policy. In declining this request it was expressly held that the case should be remanded for another trial, and that after admitting the excluded testimony, as well as all other admissible evidence, the issues of waiver should be clearly and distinctly submitted to the jury. The able trial judge who presided at the last trial, being of the opinion that there was no evidence whatever to authorize the submission of the issues of waiver to the jury, peremptorily instructed for the company. In this we think he was in error, and will indicate our reasons.

In the opinion of Chief Justice Key (204 S. W. at page 243), he made this statement for the court:

"In conclusion, it seems to us that the proof shows that the right to recover upon the first policy was by the terms of that instrument forfeited by the failure to pay the note given for the premium at the time of its maturity, unless it shall be made to appear that appellant had waived its right of forfeiture and manifested an intention to keep that policy alive. It also seems equally clear that the second policy never became operative, because of the failure of Mr. Dunken to comply with the terms and conditions upon which it was sent to him, unless it shall be made to appear that the appellant intended to waive compliance with such conditions, and treat the policy as valid and binding. We cannot say that there was no testimony whatever tending to show either of the waivers referred to, and therefore we decline

⟲═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to grant appellant's request, and render judgment for it."

This statement was made upon the assumption that the requested testimony should have been admitted, and the other testimony should not have been limited, and upon the further assumption that upon another trial such testimony would be admitted, and would not be limited as formerly. Therefore, if that course has been followed in the present trial, the holding would require the submission of the issues of waiver to the jury, unless the former opinion of this court was erroneous.

Upon a re-examination of the question we have concluded that there is testimony, although perhaps slight and circumstantial, making the question of waiver a proper one for the determination of the jury.

[1] In the case of Equitable Life Assurance Society v. Ellis, 105 Tex. at page 536, 147 S. W. at page 1156, Mr. Justice Phillips, speaking for the Supreme Court, among other things, said:

"And it is not to be wondered that in the humane progress of the law the doctrine of waiver, as applied to forfeitures, soon grew up and has become established as a fundamental principle. While it is a maxim that forfeitures are odious, the law is not eager to relieve against them; it takes no initiative, and in itself presents no remedy against the contract the parties have themselves made. But it is not, and should not be, slow to give effect to conduct reasonably indicative of an intention to forego the advantage of a forfeiture and relinquish its result. Hence the holding that it will seize upon slight circumstances as evidence of such intention, and the further settled rule, that in our opinion controls this case, that a waiver of the forfeiture of a policy of insurance will result, in the absence of any agreement to that effect, from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy or does acts based thereon"—citing Joyce on Insurance, § 1353; Titus v. Insurance Co., 81 N. Y. 419; Hollis v. State Ins. Co., 65 Iowa, 454, 21 N. W. 774.

It was also held in that case that a previous course of conduct on the part of the insurance company is admissible, upon the question of intention to waive a forfeiture although such course of conduct related to other premiums than those the failure to pay which is relied upon as constituting a forfeiture. The same doctrine is announced and followed in Underwood v. Security Life Annuity Co., 108 Tex. at page 388, 194 S. W. 585.

[2, 3] There is another principle announced in the Ellis Case that must be kept in mind, to the effect that waiver is essentially unilateral in its character and depends upon the acts or conduct of the party against whom it operates, and that no act of the party in whose favor it is made is necessary to complete it. A waiver may result without consideration, nor is it essential that it be based upon an estoppel.

[4] We shall not undertake to point out in detail all the evidence which is thought to raise the question of waiver as an issue of fact for the jury. However, the following evidence may be indicated: The course of dealing between the company and Mr. Dunken in reference to the payment of premiums on his insurance from its inception until the time of this controversy. The correspondence and documentary evidence would indicate that there had previously been grounds for forfeiture for failure to pay premiums, but which were waived by the extension of time and the granting of renewals. The agent who took this insurance originally from Mr. Dunken and delivered the policies was the general manager of appellee for the state of Tennessee, and he or his office force had attended to all matters pertaining to the policies up to the time of Mr. Dunken's death. On February 26, 1916, Mr. Dunken executed an extension note for $106.45, for the premium on policy 98322, which was due January 28, 1916. This was a 30-day note, and was given for the purpose of extension until Mr. Dunken could convert the same into a new policy, which is the second policy in controversy in this case. The evidence indicates that this extension note was signed only to keep the first policy in force until the conversion should be effected. Mr. Alexander testified that he conducted all the negotiations and correspondence with Mr. Dunken, either in person or through his office, in regard to the conversion of the first policy, and that he had authority so to do, except that his instructions from the company were, in sending out a policy for inspection, to send a form receipt, which would show that the policy was sent for examination only. In this instance no such form or receipt was sent. Mr. Alexander also testified that it was a part of his duty as manager to manage and supervise the delivery of all policies, and has been since he became manager in 1905. The relations between Alexander and Dunken were very cordial, and they were personal friends.

On February 16, 1916, Alexander wrote Dunken in regard to the conversion of the policy, advising him to convert it at once to avoid the requirement for medical examination, and stating, "Your policy is incontestable, and just as good as gold in every respect." Dunken replied, and on February 21st Alexander wrote Dunken to return the term policy at once, and inquired if he desired the new policy converted to date five years back to the original date of the term policy, and asked if he desired the company to loan him a sufficient amount

a pay the difference in back premiums. Dunken was financially embarrassed, and asked Mr. Alexander for the most favorable terms the company could give. On February 24th Alexander wrote that he would ask the company to make the conversion as requested by Dunken, and with the new policy to send papers for loan value, proceeds to be used on the cost of conversion; that in the meantime, to protect the term policy in case of delay, Dunken should sign the extension note, which he did, and it was returned to Alexander, who held possession of the same until after Dunken's death, which occurred on June 1, 1916. Alexander promised to cancel and return the premium note when the loan was made and the conversion completed.

On February 28, 1916, Mr. J. L. English, vice president of appellee, sent the new policy to Mr. Alexander with this statement, "Inclosed find this policy in exchange for No. 98322 surrendered." He also inclosed 1916 renewal and blanket receipt covering premiums to 1916 and also loan forms. He instructed Alexander to report not latter than March 31st on the new number. He instructed that if the loan was to be made the policy should be returned to the company with loan forms properly executed, "notifying us that you have collected $312.-97." This was the amount necessary to complete the conversion, after application of the loan value and payment of the 1916 premium and interest.

This letter does not indicate that the policy was not to be delivered to Mr Dunken until the loan was made and the premiums paid, nor that it was to be delivered to Dunken only for inspection and examination. At least it does not necessarily bear this construction.

On March 4th Alexander transmitted this policy, the loan papers, and a form authorizing the company to deduct the 1916 premium from the proceeds of the loan, and explaining the cost of conversion, 1916 premium, and loan value, which were received by Mr. Dunken about March 6th. In this letter Mr. Alexander stated: "I take pleasure in handing you herewith your $10,000 commercial 20-pay life policy converted from 7-year term." He also stated that the loan note must be signed by Dunken with two witnesses, and also the form authorizing the deduction of 1916 premium. He concluded the letter with this statement: "The amount due now to complete the transaction is $312.97, which is determined as follows (stating the balance due after deducting from the conversion cost and 1916 premium and interest the net loan value). Please do not fail to send me your policy when returning the above." There is nothing in this letter to indicate that it was sent merely for examination or inspection, but is clear-

ly open to the construction that it was intended to be an absolute delivery, within the time contemplated by the parties when the extension note on policy No. 98322 was given. Furthermore, the language of this letter does not necessarily show the intention to require the effecting of the loan and the payment of the balance due before there should be a delivery of the policy. The reference to the amount due to complete the transaction may well mean the amount necessary to make settlement with the company, rather than a condition prerequisite to the complete delivery of the policy and the effecting of the contract. Dunken never signed the loan papers, nor did he pay the conversion cost and the 1916 premium and interest, in fact, but these papers were all found in his safe after his death. It was agreed that all correspondence between Dunken, Alexander, and the company ceased with the letter of Alexander to Dunken, March 4, 1916, transmitting the second policy. Mr. Alexander testified: "I do not find any copy of any letters where I notified Mr. Dunken that the negotiations for the conversion of said term policy were off."

As has been stated, the vice president of the company instructed Mr. Alexander to report not later than March 31, 1916, on the new policy, and monthly reports were made by Alexander for March, April, and May, but the contents of these reports are not shown in the record. During this time the company had at its home office the renewal receipt under policy No. 98322. On May 1, 1916, the home office wrote Mr. Wright, who was then auditing the books of Alexander at Nashville, and in the letter stated that Mr. Alexander had been instructed on February 28th, by Vice President English, to report the increased premiums on the second policy in his March report, and that, "If he has been unable to make collection, this policy, with the renewal receipts, should be returned for credit." The letter also stated that the 1916 renewal receipt under this number had been returned for credit, and the home office could not understand why Alexander had not returned the policy and blanket receipt covering years 1912 to 1915, inclusive, and requesting Mr. Wright to investigate and report. The renewal receipt of 1916 referred to was not returned and credited until April 28th. Mr. Wright's reply shows that Alexander was still holding the blanket receipt, which Wright obtained and returned for credit, and it was credited May 10, 1916. In a conversation on this matter Mr. Alexander told Mr. Wright that he had sent the policy with the loan papers to Dunken at Waco, and that the matter was then in correspondence. This statement of Alexander probably did not have reference to correspondence requesting the return of the policy, for it does not appear

that he ever wrote or asked Dunken to return the same. It is more probable that it referred to the matter of settlement with the company for the new policy.

It appears that Mr. Wright, the auditor, wrote the company that he expected to go to Texas in the next ten days, and that he would see Dunken and "complete the necessary." It is not clear whether Mr. Wright meant to take up the policy, or complete the execution of the loan papers and collect the balance due on the conversion, or take an extension note for the same. In reply to this letter of Mr. Wright, the assistant secretary interpreted the letter as indicating Mr. Wright's intention to effect the return of the policy, and stated that, "The insurance has lapsed, and before anything can be done it will be necessary for Mr. Dunken to submit an application for revival." This letter was dated May 11, 1916. No communication, however, was had with Dunken, nor any notice given him that the company considered the insurance had lapsed; and it does not appear that in the meantime there had been any attempt to procure the return of the policy from Dunken. On the same day the assistant secretary wrote Mr. Alexander, acknowledging receipt of the blanket receipt covering premiums for the years 1912 to 1915, inclusive, on the second policy, and stating: "It appears that this policy on the 20-payment commercial life plan was issued in exchange for convertible term policy 98322, and in view of the fact that you have been unable to make collection, the policy (152775) should also be returned." This letter does not inform Alexander that the policy had not been delivered nor authorized to be delivered until the loan papers were executed and the balance due paid the company, but that it should be returned because Alexander had been "unable to make collection." This seems to be the last expression from any executive officer of the company before Dunken's death, and, in connection with the letter of Mr. Wright as to his intention to go to Waco and "complete the necessary," may justify the inference that the company still did not regard the insurance as forfeited, and may have evidenced the intention of the company to waive any forfeiture or condition as to delivery, if Alexander should still be able to make collection and procure settlement with the company.

This summary of the evidence bearing upon the question of waiver is sufficient, we think, to show that an issue of fact is made for the decision of the jury. Its probative force may be slight, but we cannot agree that it amounts to no more than a mere scintilla of evidence, in which case, of course, there would be no evidence to warrant the submission of the issue.

[5, 6] There is another phase of the case which must be noticed. The second policy contains the provision:

"This policy shall not take effect until the first premium hereon shall have been actually paid during the good health of the insured, and a receipt for which payment shall be the delivery of the policy."

Under the facts and circumstances of this case, we think the first premium on the second policy must be regarded as the cost of conversion and the 1916 premium, which was the initial payment, or the amount due when the contract was delivered; and by the terms of the contract the delivery of the policy is made the receipt for the initial payment. Appellant contends that the insurance company is estopped from proving, for the purpose of avoiding the contract, that the premium acknowledged in the policy to have been paid was not in fact paid. This proposition seems to be supported by the following authorities: Dobyns v. Insurance Co., 144 Mo. 95, 45 S. W. 1107; 3 Kent, Com. 260; Insurance Co. v. Wolf, 37 Ill. 354, 87 Am. Dec. 251; Insurance Co. v. Fennell, 49 Ill. 180; Insurance Co. v. Anderson, 77 Ill. 384; Fellows v. Insurance Co., 2 Disn. (Ohio) 128; New York Cent. Ins. Co. v. Nat. Protection Ins. Co., 20 Barb. (N. Y.) 475; Dalzell v. Mair, 1 Camp. 352; Fay v. Bell, 3 Taunt. 493; Marsh on Insurance, p. 335; Cyc. vol. 25, p. 730, also page 726, § 3, note; 9 Ann. Cas. 218; 19 Am. & Eng. Ency. of Law, p. 55.

The rule does not go to the extent of denying the insurance company the right to recover the amount actually due for the premiums, notwithstanding the recital and the delivery of the policy. For this purpose the receipt is treated only as prima facie evidence of payment. But when it is sought to avoid the contract and to defeat rights springing out of it, the acknowledgment of payment in the policy is conclusive.

We think these authorities lay down the correct rule in this case, and, independently of the question of waiver, the issue should be submitted to the jury whether the company intended and in fact delivered the second policy to Mr. Dunken absolutely and as a complete contract. If it shall be made to appear that the policy was so delivered and intended to become effective as a contract on delivery, and this should be found as a fact, we are of the opinion that the appellee would be precluded from denying the payment of the first premium for the purpose of avoiding the contract. This, of course, would not preclude a recovery for the conversion cost and premium for 1916, if in fact they were not paid, as seems to be undisputed.

The judgment will be reversed, and the

cause remanded for trial in accordance with the views expressed in this opinion.

Reversed and remanded.

### On Motion for Rehearing.

Able counsel for appellant has filed a motion for rehearing, in which there appear to be certain misconceptions of the effect of our opinion in this case.

[7] It is urged that we have practically nullified article 4968, Revised Statutes, which provides that an agent soliciting insurance shall be deemed the agent of the company, but shall not have the power to waive, change, or alter any of the terms or conditions of the application or policy. We have not intended to hold, nor do we hold, that Alexander had such power, but merely that his acts, tending to show a waiver, would be binding on the company only when authorized or acquiesced in by some executive officer named in the policy, with knowledge of his acts. In such case it is our opinion that the statute is not violated. It is competent for an insurance company to stipulate in the policy, as here, that a waiver may be accomplished only through the acts or conduct of executive officers, but that stipulation itself may be waived by the company, and a waiver may result by acts of its agents authorized or acquiesced in by such officers. The acts of the agents then become the acts of the company, notwithstanding the statute, which was enacted for the benefit of such companies.

It is also contended that our opinion is in conflict with Insurance Co. v. Walker, 94 Tex. 473, 61 S. W. 711, and Insurance Co. v. Stubbs, 216 S. W. 896. We do not think our judgment or opinion is opposed to the holding in either of these cases. In the Walker Case there was no evidence showing or tending to show that the company knew of the misrepresentation in the application, which seems to have been known only to the local agent and the insured. In the Stubbs Case the representations of the agent were not shown to have been brought home to the officers of the company.

Our holding in the instant case does not, as seems to be supposed, go to the extent of binding the company by any course of dealing between the insured and its agent, or by any acts or conduct of the latter not known to or acquiesced in by some executive officer named in the policy.

[8] Nor do we think we have misapplied the doctrine of the Ellis Case, as announced by the Supreme Court, in reference to a course of dealing tending to show waiver. The two original $10,000 policies, constituting Mr. Dunken's insurance with appellee, were applied for and issued at the same time, and the premiums were sometimes remitted and extensions arranged for at the same time. It cannot be said that they were so separate and unrelated as that the acts of the company, or those of its agent by its authority, in past dealings with regard to waiver of forfeiture for nonpayment of premiums when due, would be inadmissible upon the question of intent to later waive a forfeiture of either policy, or of another policy to which one of them was intended to be converted.

After much difficulty, we have concluded to overrule the motion for rehearing; and think it proper to add that we reversed this case for trial, not only upon the issue of waiver, but also as to the alleged delivery of the second policy as a complete and binding contract in effect at Mr. Dunken's death. This holding does not appear to have been challenged in the motion for rehearing.

Motion is overruled.

Motion overruled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes