## MANHATTAN LIFE INS. CO. v. STUBBS.
### (No. 245–3442.)

(Commission of Appeals of Texas, Section B. Dec. 7, 1921.)

**1. Insurance ⬳90—Policy restrictions or authority of agents not conclusive.**

Limitations contained in a life insurance policy upon the powers of the company's agent are not conclusive as to the scope of the agent's authority.

**2. Corporations ⬳400—General agent has apparent authority commensurate with business intrusted to him, and within such authority may be dealt with regardless of limitations not known.**

The general agent of a corporation who is intrusted with all of the corporation's business of a certain class or in a certain locality has apparent authority commensurate with the business intrusted to him, and parties can deal with him in matters within such authority without regard to limitations on his authority which are not brought to their notice.

**3. Insurance ⬳88—General agent has authority to state calculated dividends.**

The general agent of a life insurance company in charge of its department in the state and transacting all business for it therein has apparent authority to state to the assignee of a policy the amount of the dividends which will accrue upon the policy, and the company is bound by such statements.

**4. Insurance ⬳88 — Restrictions in contract with general agent not binding on policy holders.**

The restrictions upon the authority of the general agent of a life insurance company contained in the contract between the agent and the company are not binding upon policy hold-

ers in their dealings with such agent, where policy holders have no knowledge of such restructions.

## 5. Insurance ⊘⇒95—Company charged with notice of letters in records of general agent.

The general agent of an insurance company has authority to keep the records of his office, so that an insurance company is charged with knowledge of the contents of a letter written by the general agent, a copy of which was kept among the records, and cannot, after keeping silence with such knowledge until all premiums on endowment policy were paid, avoid liability for the amount of dividends promised in the letter.

## 6. Insurance ⊘⇒154 — General agent's statements as to dividends held construction of rule in policy.

Where an endowment insurance policy provided that the dividends should be calculated in accordance with the company's rules in force at the maturity of the policy, a statement by the general agent as to the amount of dividends which the policy would earn was rather a construction of the terms of the policy; than a variation thereof contrary to the restriction on the authority of agent's contained in the policy.

## 7. Insurance ⊘⇒520—Insurance company cannot complain of judgment for minimum stated by agent; "about."

Where the general agent of an insurance company stated that the dividends on the endowment policy would be about $1,200 to $1,300, the reasonable conclusion therefrom was that the dividends would be between $1,200 and $1,300, "about" meaning near to or approximate, and the company could not complain of a judgment awarding the policy holder the minimum amount stated (citing Words and Phrases, About).

## 8. Insurance ⊘⇒602—Tender ⊘⇒14(5)—Liable for statutory penalty for failure to pay full amount due.

A life insurance company is liable for the 12 per cent. penalty imposed by Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, for delay in making payment, though it promptly tendered the amount admitted to be due on condition of acceptance in full settlement, if the amount tendered was not the full amount of the liability.

## 9. Insurance ⊘⇒602 — Maturity of endowment policy is "loss" under statute imposing penalty.

Maturity of an endowment life insurance policy imposes an obligation upon the company to pay the amount due thereon, the same as if death had occurred, and is a loss within Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, imposing a penalty for failure promptly to pay after loss occurs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Loss.]

## 10. Tender ⊘⇒26—Order authorizing unconditional withdrawal of conditional deposit held not abuse of discretion.

Where an insurance company deposited in court the amount admitted to be due on condi-

tion that it be withdrawn only as full settlement, and order of the court, in rendering judgment for a larger amount, permitting the withdrawal of the deposit by the plaintiff on account of the judgment and not in full settlement, though rather heroic, was not an abuse of discretion, especially where its effect was to save to the insurance company the interest, pending the appeal, on such deposit which otherwise it would have had to pay.

## 11. Tender ⊘⇒27—Withdrawal of deposit under court order held not acceptance of condition.

Where an insurance company made a deposit in court to be withdrawn only as full settlement of plaintiff's claim, but the court thereafter made an order permitting withdrawal of the deposit on account, plaintiff did not, by withdrawing the deposit under the court order, accept the condition of full settlement.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by James B. Stubbs against Manhattan Life Insurance Company. A judgment for plaintiff for part only of the amount claimed by him, but allowing him penalty for attorney's fees, was affirmed by the Court of Civil Appeals (216 S. W. 896), and both parties bring error. Judgment reformed so as to permit plaintiff to recover entire amount claimed, with penalty and attorney's fee.

Seay, Seay, Malone & Lipscomb, of Dallas, for plaintiff in error.

Jas. B. & Chas. J. Stubbs, of Galveston, for defendant in error.

POWELL, J. This case, and the nature of the issues involved, have been most admirably stated by the Court of Civil Appeals as follows:

"Appellant, Manhattan Life Insurance Company, of New York, on December 26, 1902, issued its life insurance policy No. 131054 for $5,000 to Charles J. Stubbs. The annual premium was $353.40; it was known as an endowment or survivorship policy, entitled to dividends or shares of the surplus at the end of the 15-year period, and matured on December 26, 1917. The policy was, on January 9, 1903, for value, by Charles J. Stubbs assigned to James B. Stubbs, appellee here, after the first premium had been paid by the former. The company was promptly notified of the assignment, and furnished a duplicate.

"Ira F. Collins, the agent who solicited the insurance and delivered the policy, represented to Charles J. Stubbs, the insured, that the dividend at the end of 15 years would amount to $1,215, furnishing his written statement with figures to that effect, and if assured availed of the option which carried with it the dividend, he would receive the sum of $5,000, plus $1,215. The appellee, before paying the second premium (the first having been paid by Charles J. Stubbs), corresponded with A. A. Green, Jr., manager of the southwestern department of the insurance company, at Dallas, Tex., regarding

⊘⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the dividends and other rights under the policy. He had refused to pay the second premium, and had caused to be returned to Mr. Green the official receipt, which had been sent through a bank. Mr. Green, the company's manager, on December 31, 1903, wrote appellee in response to his letter, and, among other things, stated to him: 'It is true the rates on this policy are high, but you will remember we had some difficulty in getting the company to issue the policy. It is a 15-year endowment policy. If the assured is living at the end of 15 years, the policy is worth its face value in cash, increased by the dividend additions, which will amount to about $1,200 or $1,300.'

"The policy and application, among others not deemed material, contained these provisions:

" 'That in the distribution of surplus or apportionment of dividends where the policy calls therefor, the principles and methods then in use by the company in its determination of the amount apportioned to any policy issued upon this application shall be, and are hereby adopted and accepted.

" 'That no statements or promises of any agent of the company, unless written upon this application, shall be binding upon the company, nor shall any alteration of, or addition to, the terms and conditions contained in the application or the policy, be binding, unless in writing and signed by the president or secretary.'

"Before the policy matured in December, 1917, the company notified Mr. Stubbs that the dividends thereon upon the date of its maturity amounted to only $90.19, and sent him its draft for $5,090.19, being the face value of the policy with this sum for dividends added. The draft was made payable, however, to both Charles J. and James B. Stubbs, and its payment was further conditioned upon the execution by them both of a full release of any further claims or demands upon the part of either on account of the policy. This tender in like manner was again made on January 22, 1918. On both occasions James B. Stubbs returned the draft to the company, and stated that he would not accept it, because of the unfulfilled promises and statements of its agent, Collins, and southwestern manager, Green; that he would get over $1,200 in dividends, instead of the $90.19 now tendered. In so declining, however, he offered to accept the face value of the policy, $5,000, and then adjust or litigate as to the dividends; but the insurance company declined to do this, and refused to pay the $5,090.19 without the full release above referred to.

"James B. Stubbs then filed this suit upon the policy, praying for the amount due thereunder, which he alleged to be not less than $6,200, for 12 per cent. penalty and reasonable attorney's fees, under Revised Statutes, art. 4746, together with 6 per cent. interest from the date the policy matured. He declared upon the above-mentioned representations as to the amount of the dividends made to Charles J. Stubbs by the local agent, Collins, at the time the insurance was taken out, and to himself by the department manager, Green, at the time he paid the second premium thereon, and averred that but for reliance thereon the insurance would never have been contracted for originally nor continued by payment of the second and succeeding premiums. There were also allegations in the alternative which it is not thought necessary to mention.

"In answer, the insurance company denied knowledge of any such representations charged to have been made by its agents, averred that they had no such authority, and also pleaded the above quoted provisions of the application and policy. At the same time, on June 19, 1918, it tendered into court, by turning the money over to the clerk, the sum of $5,090.19, conditioned upon its being in full settlement of the appellee's demands.

"Upon the trial, the court, after overruling exceptions of both parties, rendered this judgment:

" 'The court is of the opinion that the evidence fails to show any authority on the part of the soliciting agent, or general agent, of the defendant to bind the company by agreement or promises that the company would pay a certain amount as dividends, and it is adjudged by the court that the plaintiff recover nothing as dividends, except $90.19 hereinafter allowed, and finds that the plaintiff is entitled to recover of the defendant the sum of $5,090.19. The court is of the further opinion that no legal tender was made by the defendant to the plaintiff herein of said $5,090.19 until June, 1918.

" 'The court further finds that plaintiff was entitled to 6 per cent. interest on the $5,090.19 from December 27, 1917, until June 19, 1918, which the court finds to be, upon agreed calculations, $150.

" 'The court is further of the opinion that plaintiff is entitled to recover penalties of 12 per cent. on said $5,090.19, which totals the sum of $610.82.

" 'The court is of the further opinion that the plaintiff is entitled to recover attorney's fees, as provided by said statute, and finds that $1,000, would be reasonable attorney's fees in this case.

" 'It is further ordered, adjudged, and decreed by the court that plaintiff may withdraw from the registry of the court the said sum of $5,090.19, and the clerk of this court is hereby ordered to pay said amount to plaintiff, but such payment not to be in full of plaintiff's claim against defendant.

" 'It is further ordered that, upon the plaintiff withdrawing said amount of $5,090.19, said judgment shall be credited with such amount, and the remainder thereof shall bear interest at the rate of 6 per cent. per annum until paid.

" 'To that part of the foregoing as to dividends in excess of $90.19, plaintiff excepts, and in open court gives notice of appeal.

" 'It is therefore ordered, adjudged, and decreed that James B. Stubbs do have and recover of and from the defendant, Manhattan Life Insurance Company of New York, the sum of $6,851.01, together with interest thereon from this date at the rate of 6 per cent. per annum until paid.'

"Both parties complain upon appeal—the insurance company at having to respond for the penalty, attorney's fee, and costs of suit; Mr. Stubbs at being required to accept less in dividends than the agents represented to him would accrue. After giving the helpful briefs and arguments presented most careful consideration, this court is unable to hold that a dif-

ferent judgment should have been rendered, and directs the affirmance of that entered below."

See (Civ. App.) 216 S. W. 896.

Both parties filed motions for rehearing in the Court of Civil Appeals, which were overruled. In due course, both parties filed applications in the Supreme Court for writ of error and both were granted.

The Court of Civil Appeals announces the following holding:

"The appellee was bound by the express limitations upon the authority of the agents, contained in the policy itself and the application therefor, of all of which he had or was affected with notice, and was therefore in no position to rely upon any apparent or ostensible authority in the agents, Green and Collins, to commit their principal to their individual statements that the insured would at maturity receive a certain amount in dividends; none of the statements appearing either in the application or policy. Delaware Insurance Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867; Sovereign Woodmen of the World v. Lillard, 174 S. W. 619; Equitable Society v. Carpenter, 184 S. W. 585."

We cannot concur in the holding just quoted. The authorities cited by the Court of Civil Appeals are all cases in which only local or soliciting agents were involved, and are not in point with the case at bar. In the instant case, the rights of the parties center around the assurances given by A. A. Green, Jr., to Stubbs. Green was the general agent of the insurance company, and was manager of its southwestern department, with headquarters at Dallas, Tex. His stationery showed these facts to be true, and the vice president of the company, with headquarters at the home office in New York, testified that Green was the general agent of the company, in charge of its Texas headquarters, at Dallas. There was no dispute about Green's connection with the company, and the trial court found him to be its general agent.

[1] It is true the policy herein contained certain limitations, hereinbefore quoted, upon the powers of its agents, but in Texas such limitations are not conclusive. The rule in this connection has been well stated by the Supreme Court of Texas in the case of Insurance Co. v. Lee, 73 Tex. 641, 11 S. W. 1024, as follows:

"The limitations contained in the policy as to the powers of the agents of the corporation and the manner of their exercise are not conclusive. The corporation cannot so limit or regulate its own powers to contract, and if it chooses to bind itself through its agents otherwise in any respect it may unquestionably do so. If the act is within the scope of the authority of the agent at the time it is done it will be binding upon the corporation without reference to its conformity to restrictions contained in the policy.

"As announced by the court in the case of Morrison v. Insurance Company, 69 Texas, 363:

'The ground on which insurance companies under policies like that before us are held liable for the acts of their agents done in the exercise of lawful power, but not in the manner prescribed by the policy, is that the agent represents the company and through him it has knowledge of every fact of which its agents have, and by failing to promptly repudiate such acts it is held to have ratified them or to be estopped by its silence when it ought to have spoken.' "

Again, in the case of Insurance Co. v. Hill (Civ. App.) 127 S. W. 283, we find the following language:

"Policies usually contain many conditions and restrictions inserted for the purpose of relieving the insurer from liability from all acts done by, and all notice given to, and all knowledge acquired by, their agents. Nevertheless, irrespective of the stipulations contained in the policy, if it can be said that, in doing any act, one was in fact the agent of the insurer and acting as such, his principal, though without the knowledge possessed by the agent, must be deemed to have acted with such knowledge, and be held to be bound or estopped to the same extent as if the agent had actually imparted to his principal knowledge of all the material facts known to him while acting for his principal."

[2] It will be seen from the above authorities that, if General Agent Green was acting in the scope of his authority in writing Stubbs what the dividends would amount to at the end of the 15-year period, his assurances were binding upon his principal, even though not in line with certain conditions of the policy. Therefore the next inquiry is this: What is the extent of authority of a general agent of a corporation? We think Cyc. vol. 31, p. 1340, correctly answers the query, as follows:

"A general agent, unless he acts under a special and limited authority, impliedly has power to do whatever is usual and proper to effect such a purpose as is the subject of his employment. Hence, in the absence of known limitations, third persons dealing with such a general agent have a right to presume that the scope and character of the business he is employed to transact is the extent of his authority. This rule, as already stated, does not apply when limitations upon the authority of the agent have been brought home to the knowledge of the third person dealing with him, nor when the third person fails to make such inquiry as conditions demand, especially if the facts and circumstances are such as to suggest inquiry. Furthermore, the implied power of any agent, however general, must be limited to such acts as are proper for an agent to do, and cannot extend to acts clearly adverse to the interests of the principal, or for the benefit of the agent personally. And an agent has no implied authority to do acts not usually done by agents in that sort of transaction, nor to do them in any other than the customary manner. The most general authority is limited to the business or purpose for which the agency was created."

This eminent authority last quoted cites cases from numerous states in support of its text. Among them we refer to the following:

The Supreme Court of Alabama, in the case of Furniture Co. v. Hardaway, 104 Ala. 100, 16 South. 29, announces the rule as follows:

"The principal of a special agent is only bound by acts of the agent which are in accordance with his authority, and a third party is bound at his peril to ascertain the extent of the agent's authority. 3, Brick. Dig. 22, § 54; 1 Amer.· & Eng. Encyc. of Law, 252. But a very important distinction is made, and must always be observed in the application of this rule, between special and general agents. This court has carefully drawn this distinction. As was said in Wheeler v. McGuire, 86 Ala. 402, and before and since held to the same effect: 'A general agent may exceed his express authority and the principal nevertheless be bound. The scope and character of the business, which he is empowered to transact, is, as to third persons, the extent and measure of his authority. * * * When the general agent transacts the business intrusted to him, within the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss.' The agent's authority as to third persons is what it appears to be, and must be determined by the nature of his business, and is prima facie coextensive with the requirements. Louisville Coffin Co. v. Stokes, 78 Ala. 372; Gibson v. Snow Hardware Co., 94 Ala. 346; Mechem on Agency, §§ 283–287; May on Insurance, §§ 126, 143, 144."

Again, the same court, in the case of Robinson v. Insurance Co., 128 Ala. 477, 30 South. 665, speaks as follows:

"If Warren & Stewart were the general agents of the company, with power to transact any and all business, it is not denied that the condition of the policy in respect to the keeping of the inventories might have been waived by them. But, if they were merely local agents, with no power to adjust losses, or to do more than solicit business, make surveys of property to be insured, make rates, collect premiums, and remit to the company—in the exercise of which powers their agency was general—they would have no right to adjust a loss, or waive any of the warranty conditions of the policy, or to receive notice upon which a waiver by the defendant might be based."

Still further, the same court, in the case of Mortgage Co. v. Cody, 135 Ala. 622, 33 South. 632, says:

"That Ryder was the general agent of the plaintiff in and about such matters as are here involved, the evidence, as stated, without conflict, shows. A general agent is one employed to transact all of the business of his principal of a particular kind, or in a particular place; and the powers of such agent are prima facie coextensive with the business intrusted to his care, and cannot be narrowed, even, by secret instructions or limitations not communicated to the persons with whom he deals. Syndicate Ins. Co. v. Catchings, 104 Ala. 176."

The Supreme Court of the United States, in this connection, thus expresses itself:

"The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." Insurance Co. v. Wilkinson, 13 Wall. 235, 20 L. Ed. 617.

Our own Supreme Court has several times stated that a general agent can waive limitations in policies. In the case of Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63, we have this holding:

"The appellee is a corporation, resident in the state of Pennsylvania, and incorporated under its laws. Such an agent was a general agent, whose knowledge was the knowledge of the company whose agent he was, and by whose acts, within the scope of his powers, his principal would be bound."

Again, the same court, in the case of Fitzmaurice v. Insurance Co., 84 Tex. 61, 19 S. W. 301, speaks as follows:

"The notice contained in the policy that 'no agent has power on behalf of the company to bind the company by receiving any representation or information not contained in the application for this policy' would at least confine the authority to thus act to a general agent or to one acting within the scope of his employment."

Among the numerous authorities we have read, we have found one of particular interest, because of its close similarity in fact to the case at bar. We refer to the case of Forman v. Mutual Life Insurance Co., 173 Ky. 547, 191 S. W. 279, L. R. A. 1918F, 330, Ann. Cas. 1918E, 880, in which a very able opinion was rendered by the Court of Appeals of Kentucky, which is the court of last resort of that state. The facts in the Forman Case are almost identical with those here. In the former case, the insured was handed a slip by the soliciting agent, illustrating that the dividends at the end of a 20-year period would be about $1,000. Not being content with that assurance, the insured sent the circular to the assistant secretary of the company, at its home office, and had his approval thereof. Notwithstanding all that, the company, at the end of the cumulative · period, offered the insured only about $500. They pleaded many defenses against the $1,000 agreement, all similar to the contentions raised by the company in the instant case. The Kentucky court overruled them all, and permitted a recovery on the basis of the agreement which had been relied upon by the insured. There was one difference in the Kentucky case, for in that case the insurance company was considerate enough of the convenience and rights of the insured to pay him what it admitted it owed,

and only required litigation over the balance which was in dispute. In disposing of that case, the Kentucky court said:

First. "Insurance companies, dealing as they do with all classes of people, should not be allowed to purposely mislead or deceive their patrons by preparing for their information and guidance statements, and, after securing contracts on the faith of these statements, repudiate them, and escape liability on the pretense that the papers or statements were merely allowable advertising schemes or expressions of an opinion as to what the company hoped it might be able to do. This should be so because the great majority of persons who take out life insurance have no acquaintance with the business of insurance or the manner in which it is conducted, and hence are obliged to depend for information on the assurances and representations made by the company as to what it will do."

Second. "To sum up our conclusions, we think: (1) That when any authorized agent of an insurance company attached to the policy, or, without physical annexation, by his representations or assurances makes a paper, by whatever name called, a part of the policy contract, and on the faith of the statements in this paper the insured is induced to accept the contract, the paper becomes a part of the contract, and the company is bound by its stipulations; (2) that if there is reasonable doubt as to the meaning of the contract, that construction should be adopted that will carry out the understanding of the insured as to the meaning of the contract at the time he accepted it, if it is fairly made to appear that his understanding of its meaning was produced by and based on representations and assurances in writing made to him by the company before or at the time the contract was executed, and these representations and assurances were of such a nature as to reasonably induce the insured to believe that his understanding and construction of the contract would be carried out.

"Wherefore the appeal prayed for is granted, and the judgment reversed, with directions to enter a judgment for Forman in conformity with the prayer of his petition."

So far as the facts are concerned, the only real difference between the case at bar and the Forman Case was that in the latter the assistant secretary at the home office of the company made the representations, and in the former the general agent in charge of the state headquarters of the company made them. We think to a third party there would be no difference in the apparent scope of the authority of such agents. The court, in the Forman Case, held that the company was bound when the representation was made by an authorized agent.

[3] It will be seen from the authorities above reviewed, that the powers of a general agent are almost unlimited, and are coextensive with the requirements of the business in which he is engaged. The company held Green out as its general agent and manager of its southwestern department. In fact, he was in charge of the Texas headquarters of this company; he had charge of procuring new business; the soliciting agents over the state were under him; premiums were paid through his office and policies delivered in like manner; renewals were looked after in his office; the books and records of the company's Texas business were kept by him in his headquarters; in fact, he was held out as being in complete charge of the company's affairs in Texas. The requirements of his business would naturally include the giving of information such as that desired by Stubbs. Almost any man buying endowment insurance would be vitally interested in knowing how the dividend rules would work out. The giving of that information would be essential to acquiring new business for the company. We are clearly of the view that the giving of the information in question was within the scope of Green's authority as general agent of the company, and that the latter is bound by his letter to Stubbs, even though the same be in violation of certain limitations contained in the policy. We think Stubbs was entitled to recover under said letter, and that the $90.19 offered by the company as dividends was not sufficient to amount to compliance with its contract.

[4] The company contends that the contract between itself and Green speaks for itself, and did not include the authority here under discussion. We do not concede that, but, even if the claim were true, it would be immaterial. Stubbs had no notice of the exact terms of the contract between the company and Green, and is not bound thereby. The authorities already quoted decide this point, and the Texas rule is the same. See Fire Association v. Masterson (Civ. App.) 83 S. W. 49.

[5] It is worthy of note, in speaking of an express contract between the company and Green, to bear in mind that he was in charge of all the records of the company at Texas headquarters, and made up these records. The letter in question here shows that it was copied, and an impression thereof taken. Certainly the company must take notice of the contents of its own records in an office of this kind, and yet during all of these years no effort was made to repudiate the letter in which Stubbs was promised dividends ranging from $1,200 to $1,300.

[6] We think what has already been said disposes of the question involved in the effect of this letter written by Green to Stubbs. What we have said has been upon the theory that the letter was in violation of the conditions of the policy, but as a matter of fact, we have some doubt about that. In other words, there is much reason for holding that the writing of the Green letter was not prohibited by any provision of the policy or application. The policy provided that the dividends should be calculated according to the

rules of the company in force at maturity. The letter did not destroy said provision. It only attempted to interpret that provision. The latter meant nothing in a concrete way to the insured. He, as an ordinary layman, did not know what the dividends would be. He wanted to know, in dollars and cents, what the provision about dividends meant. It was a perfectly natural desire. The answer came, not as a violation of the rule of calculation, but as an interpretation of that rule, in dollars and cents, by one who ought to have known. His positive statement, relied on by the insured, should bind his principal.

Again it is true that, no matter what may have been the original contract of insurance, the facts show that a renewal of the old contract was the result of the Green letter. Stubbs was dissatisfied, and had sent the annual receipt back and "quit the game," as he expressed it. But on the strength of the letter from Green, promising the large dividends, he reinstated his policy by making payment of the premium within the 30-day grace period. It was, in a sense, a new contract, and our courts have ruled that a new contract does not have to be made in the manner specified in the old. We quote from two opinions of the Supreme Court of Texas, in this connection, as follows:

First, from Morrison v. Insurance Co., 69 Tex. 353, 364, 6 S. W. 605, 609 (5 Am. St. Rep. 63):

"And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it." Insurance Co. v. Earle, 33 Mich. 153; Insurance Co. v. McCrea, 8 Lea, 524.

Second, from Cohen v. Insurance Co., 67 Tex. 325, 328, 3 S. W. 296 (60 Am. Rep. 24):

"There can be no doubt that an insurance company, through its authorized agent, may contract by parol for the renewal of a policy, although it may be stipulated on the face of the instrument itself that this shall not be done There is no peculier sanctity attached to such provision in contracts of this character which makes them an exception to the general rule that parties to an agreement may, by mutual concurrence, change its terms at any time after its execution so as to meet their pleasure or interest."

There seems to be some reason for concluding, in view of the authorities just quoted, that Stubbs really made a new contract with the company, in the nature of an amendment

to the old, as a result of his letter from Green. If so, the new contract might be held to be not subject to the conditions of the old.

[7] Having held that the company should be bound by the letter from General Agent Green, we think that the first paragraph of the trial court's judgment should be so reformed as to authorize a recovery of $6,200, instead of $5,090.19. It is true the letter from Green said the dividends would be about $1,200 or $1,300. According to "Words and Phrases," the word "about" means near to, or approximate. We think the reasonable conclusion to be drawn from the letter is that the dividends would range between $1,-200 as a minimum and $1,300 as a maximum. As Stubbs has signified his willingness to accept the minimum, the company cannot be heard to complain.

[8] In addition to the amount due on the policy under its terms, the defendant in error sued for penalty and attorney fees, as a liability for delay by the company in making payment, as provided for in article 4746 of Vernon-Sayles Revised Statutes of Texas. The Court of Civil Appeals upheld the action of the trial court in awarding a recovery under said statute as prayed for. The company objects most vigorously to this holding of the Court of Civil Appeals, contending that, as the recovery in court on the policy was just what it had tendered, it should not be penalized. The company claims that it had a right to demand a release in full when it offered to pay $5,090.19, which the court later found to be the extent of its liability. There is a very recent case by the Court of Civil Appeals at Austin, citing numerous authorities, which seems to uphold the company's contention in this connection. We refer to the case of Insurance Co. v. Turner (Civ. App.) 226 S. W. 487. That case holds that a recovery for penalty and attorney's fees cannot be had when the insured makes demand for more than he is entitled to recover. In view of our holding that Stubbs was entitled to recover the full amount demanded and sued for, the apparent conflict in the Courts of Civil Appeals is not before us. No one will contend, we take it, that the penalty stated does not apply where there is delay in paying the exact amount demanded by the insured, and which the courts found to be due the latter. Consequently, we recommend that the judgment awarding the penalty and attorney fees be reformed so as to award the penalty on $6,200 rather than on $5,090.19.

[9] Plaintiff in error also contends that the maturing of a 15-year endowment life insurance policy, at the end of said period, is not a "loss," in the meaning of said article 4746 of the statutes. We cannot concur in this view. The maturing of the policy, whether by death of the insured or the arrival of the

end of the cumulation period during the lifetime of the insured, would have the same effect. The liability attaches in either event, and a loss has occurred. We think the Court of Civil Appeals, in its opinion on rehearing, correctly disposes of this contention.

Plaintiff in error also urges the contention that, inasmuch as Stubbs withdrew the $5,090.19 from the registry of the court, he is now estopped from claiming more. In other words, that he withdrew the deposit subject to the conditions upon which it was tendered into court.

[10, 11] In the first place, the record does not show that the action of the court in permitting this withdrawal was properly excepted to, and that the company has any right to complain here. But, regardless of that fact, the record does not show that Stubbs asked for this order of the court. On the contrary, it does show that he repeatedly refused to accept the money upon any such conditions. The money was in the registry of the court, and much latitude is allowed the courts in handling such deposits. The order in this case does seem rather heroic, but we are not prepared to hold that the court abused its discretion. It clearly felt justified in doing what it did, and the result is that no one has been damaged thereby. In fact, the company has been saved something like $1,000 as interest since the judgment was entered about three years ago. The court provided it should not be withdrawn in full settlement of the judgment, but only applied as a credit thereon. If Stubbs had refused the money, he would have lost the use of the same all these years, and still would not have had a right to claim interest thereon. He could not ask for interest on money which the court had authorized him to take, and which he left in the court. So, all in all, the company was not prejudiced by this action of the court. Stubbs accepted the money, not from the company, but from the court under its own order.

The only case cited by the company in connection with the point just discussed is that of Turner's Sons v. Lee Gin & Machine Co., 98 Tenn. 604, 41 S. W. 57, 38 L. R. A. 549. That case is not in point, and clearly holds that money may be withdrawn on terms which the court may impose.

If it be said that the company in this case is being punished considerably, it must be remembered that it has no one to blame but itself. Stubbs agreed to accept the $5,000, being the face value of the policy, about which there was no dispute, and either arbitrate or litigate over the dividends. The company refused this offer. The record discloses no reasonable excuse for this action, which apparently evidenced a lack of ordinary consideration for the rights and conveniences of others.

We do not think it necessary to discuss this case any further. We think Stubbs had a right to rely upon the letter written him by General Agent Green, and that the trial court should have rendered judgment in favor of Stubbs for $6,200, with interest at the rate of 6 per cent. per annum. This interest, up to July 15, 1918, the date of the trial court's judgment, would have been $205.50.

We think judgment should also have been rendered in favor of Stubbs for penalties of 12 per cent. on said $6,200, which would be the sum of $744.

In view of these recommendations, we think the judgment should be so reformed as to award Stubbs the following items: $6,200; interest of $205.50; penalties of $744; attorney fees of $1,000; or, a grand total of $8,149.50. The record shows that Stubbs waived interest on the penalty item, so it should not draw interest from the date of the judgment, as all the rest of the amounts should.

Therefore, in view of all that has been said, we recommend that the judgments of the district court and the Court of Civil Appeals be so reformed as to award defendant in error, Stubbs, a judgment against the plaintiff in error for the sum of $7,405.50, with interest thereon from July 15, 1918, at the rate of 6 per cent. per annum, and for the further sum of $744, without interest, and all of said amounts to be subject to the payment of $5,090.19, which was made as shown by the record. We recommend that said judgments, reformed as aforesaid, be affirmed. We further recommend that plaintiff in error herein be taxed with all the costs of the appellate courts.

CURETON, C. J. On consideration of the opinion of the Commission of Appeals, it is ordered by the Supreme Court that the judgments of the district court and of the Court of Civil Appeals in this cause be reversed, and that judgment be here rendered in favor of James B. Stubbs against the Manhattan Life Insurance Company for $2,314.31, being $7,405.50, less a credit thereon of $5,090.19, said sum of $2,314.31 to bear interest from July 15, 1918, at the rate of 6 per cent. per annum; and for the additional sum of $744, with interest thereon from this date at the rate of 6 per cent. per annum.